2000 UT 68

**STATE of Utah, Plaintiff and Appellee,**

v.

**Gary Owen REED, Defendant
and Appellant.**

No. 990289.

Supreme Court of Utah.

Aug. 18, 2000.

Jan Graham, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Susan Hunt, Margaret Olson, Salt Lake City, for plaintiff.

Patrick L. Anderson, Salt Lake City, for defendant.

DURHAM, Justice:

¶ 1 Gary Owen Reed appeals from a final order denying a motion for a new trial and from convictions of two counts of sodomy on a child, a first degree felony, and one count of aggravated sexual abuse of a child, also a first degree felony. Reed raises four claims of error: (1) inadequate jury voir dire; (2) prosecutorial misconduct; (3) failure to bifurcate the trial proceedings; and (4) an improper elements instruction to the jury. We affirm.

## BACKGROUND

¶ 2 Beginning in the fall of 1992, Reed, who was in his late twenties, befriended the victim, a ten-year-old child in the fifth grade. Reed quickly developed an unusually close attachment to the victim and began visiting him frequently at his home and taking him on outings. The victim's mother objected to Reed's relationship with her son, and confronted Reed on numerous occasions—some one hundred times—which often resulted in shouting matches, shoving bouts, and mutual threats. These confrontations on one occasion led the mother to drive her car into Reed's motorcycle, and on another led the victim's stepfather to punch Reed in the face, breaking his nose. After each confrontation, however, Reed insisted that he would continue seeing the victim because the victim was his "best friend" and they had "a great time together."

¶ 3 As the mother's opposition grew, Reed began visiting the victim when she was not at home. Reed also took the victim away from the home, to such places as Lagoon, the 49th Street Galleria, the Sports Park, parking lots, Reed's house, and the private apartment of a friend. Reed also took the victim to such places during school hours. This was all done without the mother's knowledge or permission. During this period, Reed gave the victim gifts, money, and even marijuana, and also let the victim drive his van on many occasions. When the victim's family moved from Salt Lake City to Magna, Reed contin-

ued to pursue the victim and visited him often.

¶ 4 Throughout this period, the victim's mother continuously tried to end Reed's relationship with her son. She spoke to all of her son's teachers and to the police detective assigned to the school, who would call her if they saw Reed's van at the school. She also talked to Reed's roommates and his employer, and even tried to talk to his mother.

¶ 5 Reed displayed an obsessive disposition toward the victim, often saying that he loved him and would always be with him, and that he always wanted to be able to see him and never wanted to be unable to talk to him. Reed even devised a system of communication in which he would use a walkie-talkie to contact the victim.

¶ 6 From very early in the relationship, Reed began having sexual contact with the victim, the first incident occurring in the fall of 1992. These acts consisted of Reed's fondling the victim's genitalia and anal area, performing fellatio on the victim, and engaging in sodomy. The sex acts, some twenty to thirty incidents, began when the victim was ten years old and in the fifth grade and continued over three and one-half years, ending when the victim was thirteen years old and in the seventh grade. The victim testified that these sex acts made him feel "weird," "uncomfortable," and "gross."

¶ 7 During the first year after this relationship began, the victim started to get into trouble with the authorities. He was referred to juvenile court and placed on probation for such things as stealing, running away, and other unruly behavior. As a condition of his probation, the victim was barred from seeing Reed. Despite this, Reed continued to pursue a relationship with the victim. Finally, in May of 1995, the victim was placed in detention after being caught with Reed during school hours. It was during this detention that the victim first disclosed the sexual nature of Reed's three-and-a-half-year relationship with him.

## ANALYSIS

### I. ADEQUACY OF VOIR DIRE PROCEEDINGS

¶ 8 Reed's first point on appeal is that the trial court abused its discretion by failing to conduct adequate voir dire examination of the jury. Specifically, Reed argues that the trial court failed to ask a requested follow-up question to particular jurors who had personally known a victim of sexual abuse. The exact question defense counsel requested was:

> [W]hether they [the jurors] would tend to believe the victim over the person accused of the crime, simply because of their association with people that they know that have been accused [sic] in the past.

¶ 9 According to Reed, this question was necessary because jurors who knew abuse victims might be predisposed to believe the alleged victim rather than the accused. Reed argues that not asking the requested follow-up question was an abuse of discretion because no other question during voir dire adequately addressed this issue.

¶ 10 Our analysis is governed by *State v. Piansiaksone*, 954 P.2d 861 (Utah 1998), in which we held: " 'Whether the trial court abused its discretion [in determining the scope of voir dire] turns on whether, considering the totality of the questioning, counsel was afforded an adequate opportunity to gain the information necessary to evaluate jurors.' " *Id.* at 868 (quoting *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988)); *see also State v. Worthen*, 765 P.2d 839, 844–45 (Utah 1988).

¶ 11 We further stated in *Piansiaksone* that trial courts should liberally conduct voir dire proceedings " 'in a way which not only meets constitutional requirements, but also enables litigants and their counsel to intelligently exercise peremptory challenges and which attempts, as much as possible, to eliminate bias and prejudice from the trial proceedings.' " *Piansiaksone*, 954 P.2d at 867 (quoting *State v. James*, 819 P.2d 781, 798 (Utah 1991)); *see also State v. Taylor*, 664 P.2d 439, 447 (Utah 1983) ("[V]oir dire examination has as its proper purposes both the detection of actual bias and the collection of data to permit informed exercise of the peremptory challenge." (citations omitted)). We also indicated that " 'failure to question ju-

rors concerning issues in any certain way desired by counsel or to ask any specific question desired by counsel does not rise to the level of a constitutional violation so long as the relevant areas of bias have been covered.'" *Piansiaksone*, 954 P.2d at 867 (quoting *James*, 819 P.2d at 798).

¶ 12 Viewing the totality of the questioning in this case, we conclude that the trial court adequately covered, either directly or indirectly, the area of potential bias identified by Reed. The trial court's first pre-trial instruction to the prospective jurors informed them that this case involved two counts of sodomy upon a child and one count of aggravated sexual abuse of a child. Thus, the prospective jurors knew at the outset that the victim in this case was a child. The trial court subsequently asked the prospective jurors whether they would automatically believe a child witness over an adult, or vice versa. The trial court also asked the prospective jurors whether they would accord proper credibility to the testimony of a witness, without regard to employment, age, or circumstances.

¶ 13 Furthermore, the trial court, in response to defense counsel's request, asked again whether the jurors would believe the testimony of a child simply because he or she was a child. Although the trial court did not use the exact terms defense counsel proposed, namely the "victim" and the "person accused," in the context of this case the trial court's questioning clearly addressed Reed's concerns for potential bias. As was plainly known to all, the alleged victim was a child; therefore, asking the questions as the trial court did was sufficient to reveal any bias the jurors would have had in believing a "victim" rather than the "person accused."

¶ 14 Additionally, Reed's reliance on *State v. Saunders*, 1999 UT 59, 992 P.2d 951, is misplaced. In *Saunders*, we noted that a problem in some child sex abuse cases is that "[s]ome are inclined to accept without any hesitation a child's accusation of abuse, even in circumstances where false charges of abuse are known to occur." *Id.* at ¶ 46. In the instant case, the trial court thoroughly questioned the potential jurors regarding the issue of whether they would be inclined to believe the alleged child victim over the alleged adult perpetrator. Therefore, the concerns noted in *Saunders* were adequately addressed during the examination of the potential jurors.

¶ 15 We are satisfied that the trial court properly probed the jurors for potential bias, allowing counsel to exercise informed peremptory challenges. The trial court did not restrict counsel in pursuing further questioning, and indeed invited counsel to submit additional questions. Defense counsel, therefore, had ample opportunity to engage in follow-up questions. Instead, defense counsel passed the jury panel for cause and was apparently satisfied with the voir dire and the trial court's management of it.

## II.   PROSECUTORIAL MISCONDUCT

¶ 16 Reed contends that the prosecutor elicited inadmissable testimony that improperly influenced the jury's verdict. The exchange in question occurred during the prosecutor's examination of the detective who originally questioned Reed:

Q: [prosecutor] Where did you contact [the appellant]?

A: [detective] He was contacted by phone, and then he met me *for an interview.*

Q: Where did you meet him?

A: What building?

Q: Yes. Physically where did you and—

A: *In the Office of Adult Parole and Probation.*

(Emphasis added.)

¶ 17 Reed argues that the detective's reference to the Office of Adult Parole and Probation likely caused the jurors to infer that Reed was on probation or parole, thus improperly tainting the trial with inadmissable evidence of Reed's criminal background.

¶ 18 We review rulings on motions for a mistrial based on prosecutorial misconduct for abuse of discretion. *See State v. Hay*, 859 P.2d 1, 6 (Utah 1993). Prosecutorial misconduct occurs when the prosecutor's comments

call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict. If the prejudice is such that there is a reasonable likelihood the jury would have reached a more favorable result absent the comments, we will reverse.

*State v. Pearson*, 943 P.2d 1347, 1352 (Utah 1997); *see also State v. Harmon*, 956 P.2d 262, 276 (Utah 1998) (stating that the standard is met only if the error is "substantial and prejudicial" (internal quotation marks and citations omitted)).

¶ 19 In this case, it is extremely unlikely that the jury drew the inference Reed describes. The jury heard merely that Reed was called to come to the Office of Adult Parole and Probation for the purpose of an interview, not because he was on parole or probation. As the trial court observed, this was "simply a reference to an office where the meeting was conducted, just like the sheriff's office," and did not supply "any basis upon which the jury [could] conclude that Mr. Reed was a convicted felon, or something such as that." Furthermore, a review of the record reveals that nothing was said during the trial that could have in any way suggested that Reed had participated in criminal activity or had a criminal record unrelated to the charges in this case. We agree with the trial court and conclude that the isolated reference was insufficient to constitute prosecutorial misconduct.

## III. BIFURCATION

■ ¶ 20 Reed's third point on appeal is that the charge of aggravated sexual abuse under Utah Code Ann. § 76–5–404.1(3)(g) (1999) required a bifurcated trial proceeding, in which the underlying offense should have been proved first before evidence of the aggravating offenses was presented to the jury. Because trial counsel did not request bifurcation below, Reed seeks review of this issue under the plain error and ineffective assistance of counsel standards.

¶ 21 Section 76–5–404.1(3)(g) states:

(3) A person commits aggravated sexual abuse of a child when in conjunction with the offense described in Subsection (1) any of the following circumstances have been charged and admitted or found true in the action for the offense:

. . .

(g) the accused committed, in Utah or elsewhere, more than five separate acts, which if committed in Utah would constitute an offense described in this chapter, and were committed at the same time, or during the same course of conduct, or before or after the instant offense.

Utah Code Ann. § 76–5–404.1(3)(g).

¶ 22 Applying this statute in *State v. Wareham*, 772 P.2d 960 (Utah 1989), we held that

a defendant's guilt or innocence on the primary charge of sexual abuse should first be determined by the trier of fact before evidence of the aggravating acts are adduced under subsection (3)(g) of [section 76–5–404.1]. If the jury convicts on the primary charge, then evidence of the additional acts charged should be adduced and a second verdict returned determining whether the defendant is guilty of aggravated sexual abuse or simple sexual abuse.

*Id.* at 965.

■ ¶ 23 This bifurcated procedure, as first articulated by Justice Zimmerman in *State v. Bishop*, 753 P.2d 439, 498 (Utah 1988) (Zimmerman, J., concurring in result, and Stewart, A.C.J., and Durham, J., concurring in the opinion of Zimmerman, J.),[1] is

---

1. Justice Zimmerman described this procedure as follows:

First, evidence regarding the underlying crime should be admitted, and the jury should be asked to determine guilt or innocence based on that evidence alone. Second, if a guilty verdict is returned on the underlying charge, then evidence regarding the enhancing circumstances should be heard by the same jury for the purpose of determining whether those circumstances have been proven beyond a reasonable doubt. Only if the jury finds that the circumstances have been proven would the "convicted person" [subsequently amended to read "the accused"] receive the enhanced penalty.

*Bishop*, 753 P.2d at 498 (Zimmerman, J., concurring in result, and Stewart, A.C.J., and Durham, J., concurring in the opinion of Zimmerman, J.) (footnotes omitted).

based on "fundamental notions of fairness deeply embedded in the law" and on the principle that evidence of "bad character" or unrelated prior crimes is prejudicial because of " 'the tendency of a fact finder to convict the accused because of bad character rather than because he [or she] is shown to be guilty of the offenses charged.' " *Id.* at 495, 496 (quoting *State v. Saunders,* 699 P.2d 738, 741 (Utah 1985)). It is of course fundamental in our law that a person can be convicted only for acts committed, and not because of general character or a proclivity to commit bad acts. *See Saunders,* 1999 UT 59 at ¶ 15, 992 P.2d 951.

¶ 24 Notwithstanding the law's concern with "bad character" evidence, there are times when evidence of uncharged, related criminal acts is admissible, so long as it is not introduced for an improper purpose.[2] "Evidence of other crimes, wrongs, or acts may be admitted if it has 'a special relevance to a controverted issue and is introduced for a purpose other than to show the defendant's predisposition to criminality.' " *State v. Featherson,* 781 P.2d 424, 426 (Utah 1989) (quoting *State v. Shickles,* 760 P.2d 291, 295 (Utah 1988)). Thus, to be admissible, evidence must have probative value other than to show an evil propensity or criminal temperament.

¶ 25 This principle is formalized in rule 404(b) of the Utah Rules of Evidence, which states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In other words, evidence offered under this rule is admissible if it is relevant for a non-char-

acter purpose and meets the requirements of Rules 402 and 403.

The rule's analysis has direct application to the question of evidence of aggravating acts in the guilt phase of this case. In order to avoid the usual requirement of bifurcation, it must be shown that: (1) the evidence of the aggravating factors is offered for a noncharacter purpose under rule 404(b); (2) the evidence is relevant under rule 402; and (3) the evidence has probative value that significantly outweighs the danger it poses of unfair prejudice, as required by rule 403. *See State v. Decorso,* 1999 UT 57, ¶ 20, 993 P.2d 837.

### A.  Noncharacter Purpose

¶ 26 In *State v. Tanner,* 675 P.2d 539 (Utah 1983), we held that in cases of child abuse, including child sexual abuse, "evidence of specific instances of the defendant's treatment of the child is relevant to establish not merely a general disposition for violence or ill-will towards all children, but to establish a specific pattern of behavior by the defendant toward one particular child, the victim." *Id.* at 546. Likewise, the evidence of multiple instances of sexual contact with the victim in this case does not merely demonstrate Reed's general character or disposition, but instead demonstrates an ongoing behavior pattern which included Reed's abuse of the victim. Specifically, the evidence demonstrated the manner in which Reed intensely pursued the victim over a three-and-a-half-year period in order to gain opportunity to commit the unlawful sexual acts. This pattern also revealed the extensive preparation and planning in which Reed engaged to create opportunities for sexual contact with the victim.

### B.  Rule 402 Relevance

¶ 27 The second step in the analysis requires that evidence of the aggravating fac-

---

**2.** The admission of such evidence is left to the trial court's discretion in particular cases:

> If the facts that support the enhancing charge are part of the criminal episode out of which the basic charge arose, whether measures should be taken to separate proof of the underlying charge from proof of the enhancing facts is a matter left to the trial court's discretion. Of course, the trial court should exercise its discretion in a manner consistent with our strong concerns about unnecessarily tainting the finder of fact with evidence of other bad acts.

*Bishop,* 753 P.2d at 498 n. 7 (Zimmerman, J., concurring in result, and Stewart, A.C.J., and Durham, J., concurring in the opinion of Zimmerman, J.).

tors be relevant to the crime charged. Utah Rule of Evidence 401 defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have further stated that evidence is relevant not " 'merely because it shows a common plan, scheme, or manner of operation. Instead, evidence of a common plan, scheme, or manner of operation is admitted where it tends to prove some fact material to the crime charged.' " *Featherson*, 781 P.2d at 426 (quoting *State v. Forsyth*, 641 P.2d 1172, 1176–77 (Utah 1982)).

¶ 28 Generally speaking, this court has been highly skeptical in sexual assault cases of evidence of other unrelated sex crimes by a defendant on trial for a separate offense.[3] Here, however, the evidence of which Reed complains is not unrelated; it all concerns this victim and these charges. The evidence on which the State relied for aggravation was specifically relevant to Reed's persistent stalking and sexual abuse of this particular victim. Additionally, all of these acts were essentially interchangeable, occurred over a defined period of time and in the same uninterrupted course of conduct, and cannot be said to be unrelated for purposes of this case. Therefore, the relevance requirement of rule 402 was satisfied.

### C. Rule 403 Probative Value

¶ 29 Finally, we weigh the probative value of the evidence with the potential for creating prejudice in the minds of the jurors. The relevant rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Utah R. Evid. 403. In *State v. Shaffer*, we stated that "the trial court has discretion to exclude evidence if the court finds that the probative value of the evidence is 'substantially outweighed by the risk that its admission would consume unnecessary time, cause undue prejudice, or unfairly surprise a party.' " 725 P.2d 1301, 1309 (Utah 1986) (quoting *Tanner*, 675 P.2d at 547). Recently, we have reaffirmed that in determining whether evidence of prior crimes satisfies the requirements of rule 403,

> a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Nelson–Waggoner*, 2000 UT 59, ¶ 20, 6 P.3d 1120 (quoting *Decorso*, 1999 UT 57 at ¶ 29, 993 P.2d 837) (internal quotation marks and additional citations omitted).[4]

---

**3.** *See, e.g., Wareham*, 772 P.2d at 964. We stated in *Wareham* that "[w]hen a person stands accused of a sex crime, this Court has uniformly rejected the admission of evidence that the defendant committed other sex crimes *against persons other than the complaining witness.*" *Id.* (emphasis added). Subsequently, however, this principle has not proved to be as absolute as *Wareham* suggested; we have since allowed such evidence under extremely narrow circumstances and where it was indispensable to deciding the case. *See State v. Nelson–Waggoner*, 2000 UT 59, 6 P.3d 1120, discussed *infra* at note 4. Nevertheless, we note that the circumstances that would allow such evidence to be admitted are rare and require the highest scrutiny of the trial judge.

**4.** We upheld the trial court's decision in *Nelson–Waggoner* to allow testimony of other rape victims who alleged the defendant had raped them using methods nearly identical to that used against the victim in that case. We noted that some courts had admitted such evidence for the noncharacter purpose of establishing lack of consent in rape trials, "especially ... when a defendant allegedly obviates the victim's consent in a strikingly similar manner in several alleged rapes." *Nelson–Waggoner*, 2000 UT 59 at ¶ 24, 6 P.3d 1120. The trial court in *Nelson–Waggoner* identified ten characteristics that constituted a "signature" in the means the defendant allegedly used to commit the rape in that case, and after "conducting a scrupulous examination of this evidence ... determined that the other victims could testify to the circumstances of the other alleged rapes only if the prosecution could demonstrate that each rape about which testimony would be offered included at least six of the ten characteristics." *Id.* at ¶ 23. Despite the lan-

¶ 30 Reed argues that introduction of the aggravating factors in the guilt phase of the trial was unduly prejudicial because the evidence presented to the jury consisted primarily of the victim's testimony. Specifically, he argues that the victim's testimony contained significant inconsistencies and that his conviction "rest[ed] upon the avalanche of allegations of aggravating offenses, and the resultant conclusion that [he] must be guilty of the charged offenses, by virtue of the volume of horrific allegations made against him."

¶ 31 This case did depend largely on the credibility of the victim's testimony, as is frequently true of child sex abuse cases. Testimony about the aggravating offenses, however, allowed the victim to describe the full scope of the context in which Reed abused him over three and one-half years. Contrary to Reed's assertion that the aggravating offenses were "discrete and separate from the primary" offense, we observe that they were essentially interchangeable, were of the same nature and character as the primary offense, and were carried out on the same victim during the same uninterrupted course of conduct.[5] Such evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury; jurors will either believe or disbelieve the testimony based on the witness's credibility, not whether the witness asserts an act occurred three times or six. This evidence simply does not have the prejudicial effect that may result from introduction of prior criminal acts committed against a number of unrelated victims, and therefore does not raise the kinds of due process concerns we have expressed in *Bishop* and *Wareham*.[6] In any case, defense counsel had every opportunity at trial to challenge the victim's credibility and his testimony regarding the aggravating offenses. Therefore, we hold that there was no error in not bifurcating the trial in the instant case, under either the plain error or ineffective assistance of counsel standards.

## IV. THE ELEMENTS INSTRUCTION TO THE JURY

¶ 32 Reed's last point on appeal depends on the statutory language of Utah Code Ann. § 76-5-404.1, which reads, in relevant part:

> (1) A person commits sexual abuse of a child if, *under circumstances not amounting to* rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches . . . .

(Emphasis added.) Reed argues that the "not amounting to" language of the statute obligated the State to establish a primary offense that did not amount to sodomy, or attempted sodomy, in order to convict him of aggravated sexual abuse. In other words, Reed asserts that the State must affirmatively establish *lack* of sodomy as an element of the aggravated sexual abuse offense. Following this premise, Reed contends that the trial court gave the jury an improper elements instruction regarding the aggravated sexual abuse charge by omitting the element that the primary offense *could not* amount to sodomy.

¶ 33 In *State v. Peters*, 550 P.2d 199 (Utah 1976), we spoke directly to this issue. Analyzing the language of a forcible sexual abuse

guage in *Wareham, see supra* note 3, the facts in *Nelson–Waggoner* were sufficiently compelling and narrow for us to agree with the trial judge and allow the evidence of other sex crimes to be offered by the prosecution to establish lack of consent.

5. Defendant's specific reliance on *Wareham* is unavailing, as it is clearly distinguishable. *Wareham* involved a defendant who was charged with aggravated sexual abuse based on allegations that he had molested his youngest daughter (the primary offense), as well as his two older daughters (the aggravating offenses). Although all of the victims were sisters, the acts of abuse occurred several years apart and cannot be said to be related except in tending to show a general pattern of the defendant's abusive propensity toward children. In other words, such evidence could inappropriately lead jurors to conclude that if the defendant abused the older daughters, then he likely also abused the younger daughter. This is clearly different from the situation in which a defendant commits essentially interchangeable acts of abuse against a specific victim through a specific course of conduct.

6. *See also, e.g., State v. Tarafa,* 720 P.2d 1368, 1369–70 (Utah 1986); *State v. Saunders,* 699 P.2d 738, 741–42 (Utah 1985); *State v. McCumber,* 622 P.2d 353, 356 (Utah 1980).

statute in effect at the time, which contained the same "not amounting to" expression as the current statute, we addressed the identical argument Reed presents to us today:

> Counsel would have us require the State to prove there was no rape,—a *greater* crime,—in order to prove a *lesser* crime. Such a course, in logic, obviously is inimical to the interests of the accused.

> It is our belief and conclusion that the only rule that is realistic and makes sense is that the State need prove only that which it has charged and should be able to ignore proof as to lack of any greater offense to which the accused just may be required to respond.

*Id.* at 199–200; *see also State v. Montoya,* 910 P.2d 441, 445 (Utah Ct.App.1996) (stating that "[t]he primary purpose of the 'under the circumstances not amounting to' language was likely to encourage criminal punishment under those greater crimes when the evidence in a particular case warrants it"), *cert. denied,* 919 P.2d 1208 (Utah 1996). The *Peters* rationale is dispositive of this argument and Reed's challenge is without merit.

## CONCLUSION

¶ 34 Pursuant to the foregoing review, we hold that the trial court's voir dire examination of the jury was adequate; the testifying detective's single reference to the Office of Adult Parole and Probation did not amount to prosecutorial misconduct; the trial court did not abuse its discretion in failing to bifurcate the trial proceedings; and the trial court properly instructed the jury as to the elements of the aggravated sexual abuse charge. Therefore, we affirm.

¶ 35 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.