2002 UT App 103

STATE of Utah, Plaintiff and Appellee,

v.

David O. KINGSTON, Defendant and Appellant.

No. 20000751–CA.

Court of Appeals of Utah.

April 11, 2002.

Todd A. Utzinger, Salt Lake City, and David B. Thompson, Tesch, Vance & Miller, LLC, Park City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., and GARFF, Senior Judge[1] and THORNE, Jr., J.

## OPINION

THORNE, Jr., Judge:

¶1 Appellant David Kingston (Kingston) appeals from convictions for Incest, a third degree felony, in violation of Utah Code Ann. § 76–7–102 (1999), and Unlawful Sexual Conduct with a Sixteen or Seventeen Year–Old, a third degree felony, in violation of Utah Code Ann. § 76–5–401.2 (1999). We affirm.

## BACKGROUND

¶2 Kingston was charged with three counts of incest and one count of unlawful sexual conduct with a sixteen or seventeen year-old. The Information alleged that Kingston had sexual intercourse with his sixteen year-old niece M.N., (1) at her mother's home between January 1, 1998 and January 31, 1998; (2) at an apartment where M.N. lived on March 2, 1998; (3) at the same apartment between May 7, 1998 and May 15, 1998; and (4) also at the apartment between April 6, 1998 and April 19, 1998. The sexual intercourse that occurred between May 7, 1998 and May 15, 1998, resulted in the unlawful sexual conduct charge. The remaining sexual conduct resulted in the three incest charges.

¶3 A jury convicted Kingston on three of the four counts, finding him not guilty on one of the incest counts. Following his conviction, Kingston filed a motion for a new trial, which the trial court denied. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶4 Kingston first argues that his trial counsel rendered ineffective assistance. We review Kingston's claim as a matter of law. *See State v. Maestas*, 1999 UT 32,¶20, 984 P.2d 376.

¶5 Next, Kingston argues the trial court erred in conducting voir dire by bringing to the potential jurors' attention that Kingston

---

1. The Honorable Regnal W. Garff, Senior Judge, sat by special assignment pursuant to Utah Code Ann. § 78–2–4(2) (1996); Utah Code Jud. Admin. R11–201(6).

was an alleged polygamist. Because Kingston failed to raise this claim to the trial court, we review it for plain error. *See State v. Vargas*, 2001 UT 5,¶ 39, 20 P.3d 271 (stating "we will consider an issue raised for the first time on appeal if the trial court committed plain error").

¶ 6 Finally, Kingston argues that the prosecutor's repeated remarks at trial concerning polygamy amounted to prosecutorial misconduct. Because Kingston failed to raise this claim to the trial court, we review it for plain error. *See State v. Saunders*, 1999 UT 59,¶ 30, 992 P.2d 951 (applying plain error analysis to prosecutorial misconduct claim that defendant failed to raise at trial).

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶ 7 First, Kingston raises an ineffective assistance of counsel claim. Kingston argues he received ineffective assistance because his trial counsel failed to (1) present an ex post facto defense to the unlawful sexual conduct charge; (2) adequately present to the jury M.N.'s inconsistent pretrial statements concerning the second incest charge; and (3) request a jury instruction naming M.N. as an accomplice to the criminal charges and directing the jury to view M.N.'s testimony with caution.

■■■■ ¶ 8 To prevail on a claim of ineffective assistance of counsel, Kingston must establish that (1) "his trial counsel's performance was 'deficient,'" and (2) "he was 'prejudiced' by the ineffective assistance." *State v. Visser*, 2001 UT App 215,¶ 14, 31 P.3d 584 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "In determining whether counsel's performance was deficient, [this court] ... 'presume[s] that counsel has rendered adequate assistance.... Thus, if the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel.'" *State v. Parker*, 2000 UT 51,¶ 10, 4 P.3d 778 (citation omitted). With this in mind, we review Kingston's specific claims.

### A. Ex post facto claim

■■■ ¶ 9 Kingston claims that his trial counsel rendered ineffective assistance because he failed to raise an ex post facto defense to the unlawful sexual conduct charge. The Information alleged that Kingston and M.N. had sexual intercourse "on or about May 7, 1998 through May 15, 1998." The applicable unlawful sexual conduct statute, Utah Code Ann. § 76–5–401.2, became effective May 4, 1998.[2] Kingston argues that M.N.'s inability to identify a specific date as to when the two had sexual intercourse should have prompted trial counsel to argue that the sexual conduct might have occurred before the effective date of section 76–5–401.2.

¶ 10 Kingston offers no factual support to bolster his claim that the sexual conduct occurred before May 4, 1998. Indeed, as the State points out, May 4, 1998, fell on a Monday, and M.N. has consistently indicated that the sexual conduct occurred during the first week of May on a "Tuesday, Wednesday, or Thursday."

¶ 11 Nevertheless, the record shows that trial counsel's strategy was to deny that any sexual conduct ever occurred. We cannot say, in light of trial counsel's defense strategy, that it was not "sound trial strategy" to forego a factually unsupportable ex post facto defense. *Parker*, 2000 UT 51 at ¶ 10, 4 P.3d 778. We conclude that trial counsel's failure to raise an ex post facto defense does not amount to ineffective assistance. Kingston's first claim therefore fails.

### B. M.N.'s inconsistent pretrial statements and trial testimony.

■■■ ¶ 12 Kingston next argues that trial counsel failed to "demonstrate for the jury that M.N. had given numerous contradictory pretrial statements regarding" the second incest charge, which occurred on March 2, 1998. We disagree.

¶ 13 Our review of the record reveals that trial counsel brought to light many of the inconsistencies in both M.N.'s pretrial statements and her trial testimony. For example,

**2.** The 1998 enactment replaced former § 76–5– 401 (1983).

trial counsel pointed out to the jury that M.N. had contradicted herself when she testified that she and Kingston had engaged in sexual intercourse at her mother's house. M.N. had previously stated that the two never had sexual intercourse at her mother's home. Trial counsel also spent a great deal of time during his closing argument highlighting these inconsistencies.

¶ 14 In sum, we find no deficiency in trial counsel's performance as it relates to presenting M.N.'s inconsistent statements to the jury. Indeed, trial counsel relied on these inconsistencies to bolster his argument that M.N. had lied about having sexual intercourse with Kingston. We conclude that Kingston's second claim that trial counsel was deficient also fails.

C. Trial counsel's failure to request a favorable jury instruction.

¶ 15 Finally, Kingston argues that trial counsel's failure to request a favorable jury instruction naming M.N. as an accomplice to the crimes charged and directing the jury to view M.N.'s testimony with caution, denied Kingston effective assistance. Kingston relies upon *State v. Foust*, 588 P.2d 170 (Utah 1978), and Utah Code Ann. § 77–17–7 (1999) to support his claim.

¶ 16 In *Foust*, the Utah Supreme Court held that an incest victim would be an accomplice to the crime and her testimony would require corroboration if (1) the victim was of the age of consent at the time the sexual act occurred, and (2) a jury determined that she had consented to the sexual act. *See id.* at 173. The court relied, in part, on Utah Code Ann. § 77–31–18 (1978), which stated, "[a] conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence." *Id.* at 172 n. 1.

¶ 17 Under *Foust*, assuming that M.N. had consented to the sexual acts, she would be an accomplice and her testimony would require corroboration. However, Kingston's reliance on *Foust* is misplaced because the law changed after *Foust*. Utah Code Ann. § 77–17–7 (1999), now expressly states that "A

conviction may be had on the uncorroborated testimony of an accomplice." *Id.* Therefore, any possible benefit trial counsel may have acquired relying on *Foust* for a favorable jury instruction, namely instructing the jury that M.N.'s testimony needed to be corroborated, was lost when the Utah Legislature did away with the accomplice testimony corroboration requirement in 1979.[3]

¶ 18 Finally, without the benefit of requiring corroboration, we cannot say that it was not sound trial strategy to forego asking for a jury instruction labeling M.N. as a consenting accomplice because (1) it had a potential to inflame the jury, and (2) trial counsel's defense was that the two never had sexual intercourse.

¶ 19 Next, Kingston relies upon Utah Code Ann. § 77–17–7(2) (1999), which states:

(2) In the discretion of the court, an instruction to the jury may be given to the effect that such uncorroborated testimony should be viewed with caution, and such an instruction shall be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain or improbable.

*Id.* We find Kingston's reliance on this subsection unpersuasive. As the Utah Supreme Court stated in *Parker*, " 'if the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel.' " *Parker*, 2000 UT 51 at ¶ 10, 4 P.3d 778 (citation omitted).

¶ 20 First, such a cautionary instruction is left to the discretion of the trial court, and therefore, there is a possibility that the trial court may have denied such a request. Perhaps more importantly, the record shows that such an instruction would not have affected the jury's ultimate conclusion. Trial counsel aptly demonstrated for the jury the inconsistencies in M.N.'s pretrial statements and her trial testimony. Further, the crux of trial counsel's case was that M.N. had fabricated her story to get away from the Kingston family, and highlighted these inconsistencies in his closing argument. Finally, the

---

3. In 1979, the Utah Legislature amended Utah Code Ann. § 77–31–18, which required that accomplice testimony be corroborated, allowing a conviction based upon uncorroborated testimony to stand. In 1980, the section was renumbered to Utah Code Ann. § 77–17–7 (1980).

jury had the question of differing stories squarely presented to them for decision. We conclude that trial counsel's decision to forego asking for such an instruction was a strategic one, and therefore, we "will not find that [trial counsel's decision] demonstrates inadequacy of counsel." *Id.*

¶ 21 In sum, Kingston has failed to demonstrate that trial counsel rendered deficient assistance. We therefore reject his ineffective assistance claim.

## II. Polygamy Allegations

### A. Voir dire

 ¶ 22 Kingston argues the trial court erred in conducting voir dire by highlighting allegations that Kingston was a polygamist. Because Kingston failed to raise this claim to the trial court, we review it for plain error. *See Vargas*, 2001 UT 5 at ¶ 39, 20 P.3d 271. To establish plain error, Kingston has "the burden of showing '(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant.'" *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993) (citation omitted). Further, where trial counsel's failure to raise an objection before the trial court was the "result of a consciously chosen strategy . . . rather than an oversight," an appellate court "should refuse to consider the merits of the trial court's ruling." *State v. Bullock*, 791 P.2d 155, 158–59 (Utah 1989). In sum, when trial counsel makes a strategic decision not to raise an objection, it "should be treated as a conscious waiver and should preclude further consideration of the issue." *Id.* at 159.

¶ 23 In *Bullock*, the supreme court explained that

> If trial counsel were permitted to forego objecting to evidence as part of a trial strategy that counsel thinks will enhance the defendant's chances of acquittal and then, if that strategy fails, were permitted to claim on appeal that the Court should reverse because it was plain error for the court to admit the evidence, we would be

sanctioning a procedure that fosters invited error.

*Id.* (footnote omitted).

¶ 24 During voir dire, the trial court made the following statements concerning polygamy:

> [O]ur objective is to get a fair panel of jurors.
>
> This is fundamentally a case of incest. The coincidence to this case that makes it of interest to the public and to the media happens to be the fact that Mr. Kingston is alleged to be engaged in the practice of polygyny, commonly referred to a[s] polygamy, which means multiple spouses. Polygyny means multiple wives. I don't know any of the case—of this case really any better than any of you know this case. And until it's presented to us, we will learn together.
>
> For that reason, if any of you are selected in the final jury panel . . . I would like you to be sure that you do not read, listen, view any media reporting of this case. Because I can tell you candidly that you will get a clear view of the case in the courtroom. . . .
>
> And so I would expect that if you are unwilling to abide by any of the instructions of the Court, you would so let us know and we can then deal with whether we should excuse you for that.
>
> But that's one matter that's very important to me is that this matter be tried solely in this courtroom and not through any outside influence, source of information.[4]

¶ 25 Later, the trial court made the following statement cautioning the potential jurors:

> I explained at the very beginning of this case that fundamentally this is not a case about polygamy. This is a case about an allegation of incest. . . .
>
> Now, the fact that Mr. Kingston is alleged to be—and I don't even know all the details of that—a polygamist, should really have no bearing on this case. And what I want to find out about is whether there are those among you . . . who feel[ ] that they are more inclined to be more favorable to

---

4. We take this and subsequent passages from the hearing transcript contained in the record.

the State, most favorable to Mr. Kingston on that factor alone.

¶ 26 The Utah Supreme Court has explained that the trial court has " 'considerable latitude as to the manner and form of conducting the voir dire examination.' " *State v. Mead,* 2001 UT 58, ¶ 31, 27 P.3d 1115 (quoting *State v. Malmrose,* 649 P.2d 56, 60 (Utah 1982)). Moreover, the court has expressly explained that "trial courts should liberally conduct voir dire proceedings ' "in a way which not only meets constitutional requirements, but also enables litigants and their counsel to intelligently exercise peremptory challenges and which attempts, as much as possible, to eliminate bias and prejudice from the trial proceedings." ' " *State v. Reed,* 2000 UT 68, ¶ 11, 8 P.3d 1025 (quoting *State v. Piansiaksone,* 954 P.2d 861, 867 (Utah 1998) (citation omitted)). We generally review matters concerning voir dire for an abuse of the trial court's considerable discretion. *See Mead,* 2001 UT 58 at ¶ 10–11, 27 P.3d 1115.

¶ 27 In the present matter, the trial court's remarks addressed the pretrial publicity surrounding the case and sought "to eliminate bias and prejudice from the trial proceedings." *Reed,* 2000 UT 68 at ¶ 11, 8 P.3d 1025 (quotations and citations omitted). In fact, trial counsel later testified at a motion hearing for a new trial that both he and Kingston agreed that because "there'd been extensive pretrial publicity on the polygamy issue ... we decided in the voir dire questions that I submitted to the judge, to sort of face this situation head on, to have the judge ask these questions, and try to ferret out anybody that had any bias." Later, in response to the trial court's statements, trial counsel responded "the court asked basically the questions we submitted. It got into the nature of the pretrial publicity, the nature of polygamy. And in fact, really, he did a pretty good job of asking questions."

¶ 28 We conclude that the trial court committed no error by its statements made to the potential jurors. Additionally, we conclude that trial counsel's strategic decision to forego objecting to those statements effectively waived any claim of error.

B. Polygamy allegations at trial.

¶ 29 Next, Kingston argues the trial court erred by allowing the State to "repeatedly br[ing] to the jury's attention the claim that Kingston was a polygamist." We disagree.

¶ 30 During the hearing on Kingston's Motion for a New Trial, Kingston's trial counsel testified to the following:

Trial Counsel: Some evidence of polygamy was going to come in, to some extent, yes.

Mr. Utzinger: Throughout the trial, eventually you made a number of objections to attempts to elicit evidence of polygamy. Do you recall?

Trial Counsel: I think they mostly had to do with his [Kingston's] wives and stuff....

Mr. Utzinger: Those were all sustained, as I recall?

Trial Counsel: I believe they were.

Mr. Utzinger: Okay. So in hindsight, do you think that perhaps you might have been able to block more evidence of polygamy from coming in, given the judge's favorable rulings on each of your objections?

. . . .

Trial Counsel: You know, I look back over that transcript, and I knew this question would come up, and I thought about it. No. You know, *part of our defense involved the fact that she was trying to get away from the Kingston family.* Part of our defense was sort of set forth in the voir dire when we asked those questions. So, no. You know, as I look back on the direct, which basically is where evidence came from, from M.N., I didn't see anything in there that I would object to now that I didn't object to then.

(Emphasis added.)

¶ 31 As we believe is evident from trial counsel's testimony, his decision not to object to every reference to polygamy was a "consciously chosen strategy ... rather than an oversight." *Bullock,* 791 P.2d at 158–59. Accordingly, trial counsel's reasonable strategic decision not to raise an objection below

precludes this court from addressing the merits of Kingston's claim for the reasons set forth above.

### III. Prosecutorial Misconduct

¶ 32 Finally, Kingston argues the prosecutor's repeated references to polygamy amounted to prosecutorial misconduct. However, Kingston failed to raise this claim in the trial court, and trial counsel admitted that "[s]ome evidence of polygamy was going to come in." Therefore, trial counsel's decision not to raise this claim also appears to be "consciously chosen strategy . . . rather than an oversight." *Bullock,* 791 P.2d at 158. And, as we stated above, when trial counsel makes a strategic decision not to raise an objection, it "should be treated as a conscious waiver and should preclude further consideration of the issue." *Id.* at 158–59. Accordingly, we do not address the merits of Kingston's claim.

¶ 33 Kingston's convictions are therefore affirmed.

¶ 34 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and REGNAL W. GARFF, Senior Judge.

