2006 UT App 219

**STATE of Utah, Plaintiff and Appellee,**

v.

**Blair Alan DEVEY, Defendant and Appellant.**

**No. 20050414–CA.**

Court of Appeals of Utah.

May 25, 2006.

---

Clayton A. Simms, Clayton A Simms LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and ORME.

## OPINION

McHUGH, Judge:

¶1 Blair Alan Devey appeals his convictions of three counts of aggravated sexual abuse of a child, one count of sodomy on a child, one count of rape of a child, three counts of rape, one count of aggravated sexual assault, one count of forcible sodomy, and two counts of object rape. He primarily alleges prosecutorial misconduct during closing arguments and prejudicial error in a witness's reference to the complaining witness as "the victim." We affirm.

## BACKGROUND

¶2 "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Winfield*, 2006 UT 4, ¶2, 128 P.3d 1171 (quotations and citation omitted).

¶3 Based on a course of conduct that was directed at the complaining witness in this case (the child) and spanned approximately four years, Devey, the child's biological father, was charged with multiple sex-related crimes.

¶4 Prior to Devey's trial on these charges, his counsel filed a motion in limine requesting that the court prohibit the State and any witnesses from referring to the child as "the victim." After a hearing on the matter, the trial court denied Devey's motion.[1] During the trial, one of the State's witnesses made a single reference to the child as "the victim."[2]

¶5 At trial, the child testified generally about Devey's course of conduct and specifically about several of her encounters with Devey. After testifying about several specific instances when Devey touched her vagina with his fingers and mouth, the child also testified that similar encounters had occurred "quite often" and "quite frequently." Later in her testimony, the child recounted several specific instances when Devey had both vaginal and anal intercourse with her. The child also indicated that although she did not know exactly how many times Devey had vaginal intercourse with her, it was probably "four at the least." The child also testified that Devey used a vibrator in several encounters with her and would "put it in [her] vagina, and sometimes just play with it and stuff like that." The child did not testify about the specific number of times this happened, but indicated it happened more than once by stating that Devey "use[d] it on [her] sometimes" and that "[o]ccasionally it was in my room; sometimes it was in his" bedroom. Additionally, the child testified that Devey showed her pornography. She did not indicate the specific number of times, but again noted that it happened on more than one occasion by stating that Devey showed her movies and "things on his computer" that portrayed "lesbians" or "sometimes things with three people [or] two people." All of this testimony was received by the trial court without objection from Devey.

¶6 At the close of Devey's trial, both the prosecutor and Devey's counsel presented their closing arguments. In one portion of the prosecutor's closing argument, she stated:

So, I'd ask you to step back occasionally and look at the big picture of what has been presented to you, and the evidence in this case is overwhelming. The evidence is very, very clear. The evidence is that [Devey] committed each and every one of these crimes and many more that he is not

---

1. The record indicates that the trial court denied Devey's motion, but we are unable to find, and the parties have not directed us to, any sort of written ruling on the issue. In addition, the record does not contain a transcript of the motion hearing.

2. In relevant part, this witness stated that he "went to the Children's Justice Center and watched the interview of the victim."

charged with, but the evidence is just overwhelming and establishes that very clearly.

Basically what this case boils down to is you have to decide whether to believe [the child]. You have to decide whether to believe her account of what happened.

¶ 7 Following closing arguments, Devey filed a motion for a new trial in which he argued that these remarks amounted to prosecutorial misconduct because they referenced evidence not before the jury in violation of rule 404(b) of the Utah Rules of Evidence. The trial court denied Devey's motion, but did give a curative instruction to the jury indicating that statements of counsel were not evidence. Thereafter, the jury returned guilty verdicts on all counts. Devey appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Devey argues that the trial court erred by denying his motion for a new trial, which was based on allegedly improper remarks the prosecutor made during closing arguments. "A trial court has discretion in determining whether to grant or deny a motion for a new trial, and we will not reverse a trial court's decision absent clear abuse of that discretion." *State v. Harmon*, 956 P.2d 262, 265–66 (Utah 1998).

¶ 9 Devey also argues that the trial court erred by denying his motion in limine to prohibit the State and its witnesses from referring to the child as "the victim." Devey contends that, as a result, one of the State's witnesses referred to the child as "the victim," thereby depriving Devey of the constitutional right to the presumption of innocence. When examining a claimed violation of the constitutional right to the presumption of innocence, "we appl[y] close judicial scrutiny and review[ ] the trial court's decision for

correctness." *State v. Kell*, 2002 UT 106,- ¶ 11, 61 P.3d 1019.

## ANALYSIS

### I. Motion for New Trial and Prosecutorial Misconduct

¶ 10 Devey argues that the trial court erred by denying his motion for a new trial. Devey based the motion on allegedly improper remarks the prosecutor made during closing arguments.[3] To determine whether a prosecutor's statements during closing arguments were improper and constitute reversible error, we must examine

(1) whether the remarks call[ed] to the attention of jurors matters which they could not properly consider in determining their verdict; and (2) the prejudicial effect of the statement on the defendant's case. If determined to be harmful, improper statements will require reversal. To obtain a reversal, the defendant must show that the prosecutor's remarks were obviously improper and harmful.

*State v. Colwell*, 2000 UT 8, ¶ 39, 994 P.2d 177 (citations omitted). Even if a defendant is able to establish that the prosecutor's remarks were improper, that defendant must also demonstrate that the effect of those remarks was "substantial and prejudicial such that there is a reasonable likelihood that, in [their] absence, there would have been a more favorable result." *State v. Wright*, 893 P.2d 1113, 1118 (Utah Ct.App. 1995) (quotations and citations omitted).

¶ 11 Devey asserts that the prosecutor's statements were improper because they referenced evidence in violation of rule 404(b) of the Utah Rules of Evidence.[4] *See* Utah R. Evid. 404(b) (providing that, subject to cer-

3. Devey seems to claim that the prosecutor's remarks somehow referenced prior criminal acts Devey committed against a party or parties unrelated to this case. We disagree. When read in context, the prosecutor's remarks clearly reference evidence presented to the jury concerning criminal acts Devey committed against the child, but which were not charged as separate offenses.

4. Although Devey contends that the prosecutor's reference to this evidence violated rule 404(b) of the Utah Rules of Evidence, *see* Utah R. Evid. 404(b), Devey did not raise an objection based on

rule 404(b) when the evidence was being presented at trial. Accordingly, the State maintains that Devey waived any claims relating to this evidence and, as a result, cannot raise them on appeal. However, Devey did raise the issue in his motion for a new trial following closing arguments. While we agree that Devey did not raise the issue at the most appropriate time during the proceedings before the trial court, he did in fact raise the issue below; accordingly, we address his claim on its merits.

tain exceptions, "[e]vidence of other crimes, wrongs[,] or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). Evidence is admissible under rule 404(b) if "(1) the evidence is offered for a proper, noncharacter purpose, such as one of those listed in rule 404(b); (2) the evidence meets the requirements of rule 402; and (3) the evidence meets the requirements of rule 403." *State v. Allen*, 2005 UT 11, ¶ 16, 108 P.3d 730; *see* Utah R. Evid. 402, 403.

¶ 12 In *State v. Reed*, 2000 UT 68, 8 P.3d 1025, the Utah Supreme Court considered rule 404(b) under similar circumstances. *See id.* at ¶¶ 25–31. In *Reed*, the defendant was convicted of sodomy on a child and aggravated sexual abuse of a child. *See id.* at ¶ 1. On appeal, the Utah Supreme Court considered the defendant's claim that the trial court erred by failing to bifurcate his trial to require the State to prove the underlying offense of sexual abuse of a child before evidence of the aggravating offenses was presented to the jury. *See id.* at ¶ 20. The court held that the trial court did not err by failing to bifurcate the trial and concluded that evidence of the aggravating offenses was admissible under rule 404(b). *See id.* at ¶¶ 25–31.

¶ 13 In holding that the evidence was offered for a noncharacter purpose, the *Reed* court stated that "the evidence of multiple instances of sexual contact with the victim in this case does not merely demonstrate [the defendant]'s general character or disposition, but instead demonstrates an ongoing behavior pattern which included [the defendant]'s abuse of the victim." *Id.* at ¶ 26. The court also concluded that the evidence was relevant under rule 402. *See id.* at ¶¶ 27–28. In reaching this conclusion, the court relied on the fact that the evidence that the defendant complained of was not unrelated to the case, but instead, was related exclusively to the victim and the charges in the case. *See id.* at ¶ 28. The court also relied on the fact that "all of [the] acts were essentially interchangeable, occurred over a defined period of time and in the same uninterrupted course of conduct, and [could not] be said to be unrelated for purposes of [the] case." *Id.* Finally,

the court determined that the evidence satisfied the requirements of rule 403. *See id.* at ¶¶ 29–31. In reaching that conclusion, the court stated:

> This case did depend largely on the credibility of the victim's testimony, as is frequently true of child sex abuse cases. Testimony about the aggravating offenses, however, allowed the victim to describe the full scope of the context in which [the defendant] abused him over three and one-half years. Contrary to [the defendant]'s assertion that the aggravating offenses were "discrete and separate from the primary" offense, we observe that they were essentially interchangeable, were of the same nature and character as the primary offense, and were carried out on the same victim during the same uninterrupted course of conduct.

*Id.* at ¶ 31 (footnote omitted).

¶ 14 Similarly, we conclude that the evidence referenced in the prosecutor's remarks in this case was admissible under rule 404(b). First, the evidence was offered for a noncharacter purpose—i.e., it was not offered to prove Devey's "general character or disposition, but instead demonstrate[d] an ongoing behavior pattern which included [Devey]'s abuse of [the child]." *Id.* at ¶ 26. Although the child testified in detail about several of her many encounters with Devey, her testimony, as a whole, concerned Devey's course of conduct over approximately a four-year period. Second, the evidence that Devey complains about was relevant under rule 402 because it was not unrelated to the instant case; to the contrary, the evidence concerned Devey's conduct with the child and the charges in this case. *See id.* at ¶ 28. Further, the acts that the child testified about "were essentially interchangeable, occurred over a defined period of time and in the same uninterrupted course of conduct, and [could not] be said to be unrelated for purposes of this case." *Id.*

¶ 15 Finally, as in *Reed*, the evidence in this case satisfies the requirements of rule 403. This case depended largely on the credibility of the child's testimony, "as is frequently true of child sex abuse cases." *Id.* at ¶ 31. The child's testimony about all of De-

vey's actions, including those for which he was not specifically charged, allowed her to describe the "full scope of the context" of Devey's conduct over the relevant time period. *Id.* In addition, the instances of abuse that the child testified about "were essentially interchangeable, were of the same nature and character ..., and were carried out on the same victim during the same uninterrupted course of conduct." *Id.* As the *Reed* court noted,

> Such evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury; jurors will either believe or disbelieve the testimony based on the witness's credibility, not whether the witness asserts an act occurred three times or six. This evidence simply does not have the prejudicial effect that may result from introduction of prior criminal acts committed against a number of unrelated victims, and therefore does not raise the kinds of due process concerns we have expressed in [prior opinions].

*Id.*

¶ 16 Because we hold that the evidence referenced in the prosecutor's remarks was admissible under rule 404(b), it follows that those remarks were not improper. Further, any possible confusion caused by the prosecutor's reference to uncharged acts against the child should have been cured by the trial court's reminder to the jury that statements of counsel are not evidence. *See State v. Menzies,* 889 P.2d 393, 401 (Utah 1994) ("We generally presume that a jury will follow the instructions given it."); *State v. Burk,* 839 P.2d 880, 883 (Utah Ct.App.1992) ("In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing to their duty, and that they followed the instructions of the court." (quotations and citation omitted)). Therefore, we conclude that the trial court did not err by denying Devey's motion for a new trial.

## II. Reference to the Child as "The Victim"

¶ 17 Devey asserts that the trial court erred by denying his motion in limine to prohibit the State and its witnesses from referring to the child as "the victim." Devey contends that, as a result, one of the State's witnesses referred to the child as "the victim," thereby depriving Devey of the constitutional right to the presumption of innocence. We agree with Devey that in cases such as this—where a defendant claims that the charged crime did not actually occur, and the allegations against that defendant are based almost exclusively on the complaining witness's testimony—the trial court, the State, and all witnesses should be prohibited from referring to the complaining witness as "the victim." *See, e.g., Jackson v. State,* 600 A.2d 21, 24 (Del.1991) (stating, on appeal from a rape conviction, that "[t]he term 'victim' is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue. We agree with defendant that the word 'victim' should not be used in a case where the commission of a crime is in dispute."); *Veteto v. State,* 8 S.W.3d 805, 816–17 (Tex.App.2000) (stating, on appeal from a conviction for aggravated sexual assault of a child, that "[t]he sole issue of [the defendant's] case was whether he committed the various assaults on [the child]. Referring to [the child] as the victim instead of the alleged victim lends credence to her testimony that the assaults occurred and that she was, indeed, a victim." (citation omitted)); *Talkington v. State,* 682 S.W.2d 674, 674–75 (Tex. App.1984) (stating, on appeal from a rape conviction, that "[a]ppellant argues that the court improperly commented on the weight of the evidence in the charge [to the jury]. We agree. The court, in its charge, referred to the complainant as the 'victim.' ... The sole issue in the case was whether or not the complainant consented to the sexual intercourse. All parties testified that the sexual intercourse occurred. The controversy was whether the complainant was truly a 'victim' or a willing participant.... 'Victim' is defined in Black's Law Dictionary, 5th Ed., as '[t]he person who is the object of a crime....' If the complainant consented to the sexual intercourse, as testified by appellant and [a witness], she was not the object of a crime, and she was not a 'victim.' We hold that to refer in the court's charge to the complainant as the 'victim' when the issue is whether or not she consented to the sexual

intercourse, constitutes reversible error." (fourth alteration in original)).[5]

¶ 18 In light of our agreement with Devey on this general proposition, it may be that the trial court improperly denied Devey's motion in limine to prohibit the State and its witnesses from referring to the child as "the victim." However, because we do not have the benefit of either a written ruling or a transcript of the hearing on Devey's motion, we are unable to ascertain the trial court's reasoning behind its decision to deny the motion. As a result, we cannot determine whether, under the facts and circumstances of this case, the ruling was appropriate.[6] It is unnecessary for us to consider this issue further, however, because we conclude that even if the trial court erred by denying Devey's motion, the solitary reference to the child as "the victim" in this case was not prejudicial to Devey and constituted harmless error.

■ ¶ 19 "[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings. Put differently, an error is harmful only if the likelihood of a different outcome is sufficiently high that it undermines our confidence in the verdict." *State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888 (citation omitted); *see also* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity[,] or variance which does not affect the substantial rights of a party shall be disregarded."). We have already expressed our agreement with Devey's general argument that use of the term "victim" should be avoided in a case where there is a dispute as to whether any crime took place. In this case, however, we are not presented with a circumstance where the term "victim" was used repeatedly throughout Devey's trial or was used by either the State or the trial court. *Cf. Veteto*, 8 S.W.3d at 816–17 (holding that the trial court commented on the weight of the evidence by referring to complaining witness as

"the victim," rather than the " 'alleged' victim"); *Talkington*, 682 S.W.2d at 675 ("We hold that to refer in the court's charge to the complainant as the 'victim' when the issue is whether or not she consented to the sexual intercourse, constitutes reversible error."). To the contrary, there was only one isolated reference to the child as "the victim," and the reference was made, without prompting, by a witness. Devey has not persuaded us that this single reference deprived him of his constitutional right to the presumption of innocence. The reference "is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings," and it does not "undermine[ ] our confidence in the verdict." *Evans*, 2001 UT 22 at ¶ 20, 20 P.3d 888. Therefore, we conclude that the error, if any, created by one witness's reference to the child as "the victim" was harmless error and "shall be disregarded." Utah R.Crim. P. 30(a).

## CONCLUSION

¶ 20 We hold that the evidence referenced in the prosecutor's remarks was admissible under rule 404(b) and, therefore, that those remarks were not improper. Accordingly, we conclude that the trial court did not err by denying Devey's motion for a new trial. We agree with Devey's argument that, in cases such as this one, the State and its witnesses should be prohibited from referring to a complaining witness as "the victim." However, we conclude that one witness's sole reference to the child as "the victim" in this case constituted harmless error. For these reasons, we affirm Devey's convictions.

¶ 21 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.

---

5. We recognize the distinction between the use of the term "victim" in jury instructions as opposed to its use in argument of counsel or testimony. By instructing the jury, the court's use of the word "victim" may be seen as commentary on the weight of the evidence. Nevertheless, we conclude that the term should be avoided gener-

ally in cases where the ultimate issue before the jury is whether any crime actually occurred.

6. For example, it is possible that physical evidence could confirm that the child was a victim of sexual abuse, while only the identity of the abuser was in dispute.