**STATE of Utah, Plaintiff and Appellant,**

v.

**Demar W. NILSON, Defendant and Appellee.**

No. 920278–CA.

Court of Appeals of Utah.

June 8, 1993.

Jan Graham and Marian Decker, Salt Lake City, for plaintiff and appellant.

Jo Carol Nesset–Sale, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD, and ORME, JJ.

GREENWOOD, Judge:

The State of Utah appeals from the trial court's order quashing the information and terminating the prosecution of Demar Nilson because reprosecuting Nilson would violate his constitutional right to protection from double jeopardy. We affirm.

## BACKGROUND

In October of 1991, the State charged Nilson with one count of forcible sexual abuse, in violation of Utah Code Ann. § 76–5–404 (1990), for allegedly fondling the genitals of J.H. The information charging Nilson alleged that the abuse occurred on or between February 1, 1989, and April 30, 1989. At the preliminary hearing in November of 1991, J.H. testified under both direct and cross-examination, that the alleged abuse occurred in 1989 during the time indicated in the information. Nilson was bound over for trial on the crime as charged in the information.

On January 15, 1992, a jury was impaneled and sworn and the trial began. The next day, J.H. testified on direct examination that the abuse occurred in 1989 while he was in the eighth grade. During an extensive cross-examination that continued through that afternoon and resumed the next day, J.H.'s story remained consistent as to the time period during which the abuse occurred. On redirect examination, however, J.H. changed his story and testified that the abuse occurred in 1990, while he was in ninth grade. Despite the prosecutor's efforts to have J.H. reconsider his testimony, J.H. insisted that the abuse occurred during 1990.

Faced with testimony which contradicted the dates in the information, the preliminary hearing testimony, and the earlier tri-

al testimony, the prosecutor moved to amend the information to charge that the abuse occurred on or between February 1, 1990 and April 30, 1990. Outside the presence of the jury, Nilson's counsel objected to the proposed amendment on the ground that it would substantially prejudice Nilson's defense. The trial court denied the State's motion to amend the information because requiring Nilson to present a defense based on the newly alleged time frame for the alleged offense would substantially prejudice him.

After the trial court denied the State's motion the following exchange occurred:

Prosecutor: Your honor, based upon that ruling, that puts the State in the position of attempting to prove something which at this point, of course, is impossible. Our victim, who is the only witness that can establish the date, has now unequivocally committed himself to 1990. In fact, I suppose we would have to—the court would have to sustain a directed verdict on motion of defense. So, therefore, our only reasonable course is for the State to move to dismiss and simply refile, charging the correct date.

Defense Counsel: I have no objection to the motion to dismiss.

The Court: Well, and I already—and I anticipated that at the close of the evidence that may occur, so I was ready to rule on that matter. And I agree with you, I would have no other choice because of the circumstances, and I would have to grant a directed verdict. So based upon your motion to dismiss, I will go ahead and dismiss the case.

After the jury had been excused, defense counsel requested clarification on the record as to what had just taken place:

Defense Counsel: Your honor, the only thing I wanted to make sure was clear on the record. I believe the court said that had the State not moved to dismiss the case, that you would have granted a motion for a directed verdict at the end of the State's case. Is that what the court said?

The Court: I said if I had to entertain that motion, that it appeared in this case,

based on my ruling, that would be about the only alternative I would have had. Defense Counsel: Because the State indicated we're going to have to retry, and apparently we're going to have a battle over whether double jeopardy had attached.

. . . .

The Court: I want you to know I anticipated that would have occurred had we proceeded forward.

On January 17, 1992, the State filed a second information alleging that the abuse occurred between February 1, 1990 and April 30, 1990. The second information was identical to the first one except for the time frame for the offense alleged. Nilson filed a motion to quash the information, alleging that the filing of the second information violated his constitutional protection against double jeopardy. The trial court granted Nilson's motion and entered its order quashing the second information on March 24, 1992.

## ISSUES

The State appeals, claiming Nilson's statement that he had no objection to the State's motion to dismiss allows retrial on the second information, notwithstanding Nilson's claim of double jeopardy. The State argues that Nilson effectively consented to the termination of trial prior to a verdict. Nilson, on the other hand, contends that after the State admitted the impossibility of going forward without an amended information and acknowledged the certainty of the court's granting a directed verdict, he offered no objection to the dismissal of his case, because it was the only reasonable course to take. He argues that, considering the State's admissions, it is illogical and erroneous to construe his lack of objection to the dismissal as consent to the refiling of the case against him.

## ANALYSIS

Nilson bases his opposition to the State's attempt to reprosecute him on the sexual abuse charge on his constitutional protection against double jeopardy. "The guarantee assures that, with certain exceptions,

an individual will not be forced to endure the strain, embarrassment, anxiety and expense of a [second] criminal trial" for the same offense. *State v. Ambrose*, 598 P.2d 354, 357 (Utah 1979) (citing *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)). Double jeopardy protection also implicates "the defendant's 'valued right to have his trial completed by a particular tribunal.'" *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).

Jeopardy attaches once "a jury has been sworn and impaneled." *State v. Ambrose*, 598 P.2d at 358. Both the United States and Utah Constitutions "guarantee that no person shall be twice put in jeopardy for the same offense." *State v. Pearson*, 818 P.2d 581, 584 (Utah App.1991); *see* U.S. Const. amend. V;[1] Utah Const. Art. I, § 12. Although under certain circumstances a trial may terminate without double jeopardy attaching, *see Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), in assessing whether the protection applies, "[w]e resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.'" *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035–36, 10 L.Ed.2d 100 (1963) (quoting *United States v. Watson*, 28 Fed.Cas. 499, 501).

Utah Code Ann. § 76–1–403 (1990) appears to codify the double jeopardy guarantee and its exceptions.[2] The pertinent sections are as follows:

(1) If a defendant has been prosecuted for one or more offenses arising out of a single criminal episode, a subsequent prosecution for the same or a different offense arising out of the same criminal episode is barred if:

. . . .

(b) The former prosecution:

. . . .

(iii) was improperly terminated[.]

. . . .

(4) There is an improper termination of prosecution if the termination takes place before the verdict, is for reasons not amounting to an acquittal, and takes place after a jury has been impanelled and sworn to try the defendant, or, if the jury is waived, after the first witness is sworn. However, termination of prosecution is not improper if:

(a) The defendant consents to the termination[.]

. . . .

(c) The court finds and states for the record that the termination is necessary because:

(i) It is physically impossible to proceed with the trial in conformity with the law; or

(ii) There is a legal defect in the proceeding not attributable to the state that would make any judgment entered upon a verdict reversible as a matter of law; or

(iii) Prejudicial conduct in or out of the courtroom not attributable to the state makes it impossible to proceed with the trial without injustice to the defendant or the state; or

(iv) The jury is unable to agree upon a verdict; or

(v) False statements of a juror on voir dire prevent a fair trial.[3]

The State concedes on appeal that the second information charges Nilson with the

---

**1.** "The double jeopardy provisions of the U.S. Constitution, Amendment V, has been made applicable to the State[s] in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)." *Ambrose*, 598 P.2d at 357 n. 3.

**2.** Neither Nilson nor the State has delineated how, if at all, constitutional double jeopardy protection and the statute differ. There is no federal counterpart to the Utah statute.

**3.** Section 76–1–403(4)(c) sets forth circumstances commonly described as a "legal necessity," where the court may properly terminate the trial without barring subsequent retrial. See *Ambrose*, 598 P.2d at 358; *Pearson*, 818 P.2d at 584.

same offense as did the first and that jeopardy had attached prior to the order of dismissal, thus satisfying the provisions of section 403(1). However, even if jeopardy attached, the statute provides the State two grounds upon which to argue that, because the former prosecution was not "improperly terminated," reprosecution does not constitute double jeopardy. Utah Code Ann. § 76–1–403(4). The State could reprosecute if the termination was not for reasons "amounting to an acquittal," *id.*, or if the defendant consented to the termination, *id.* at 76–1–403(4)(a). In this case, however, the State only claims that retrial is permissible because Nilson consented to the State's motion to dismiss. Therefore, the pivotal issue becomes whether Nilson effectively consented to the dismissal so as to defeat his claim of double jeopardy.

The Utah Supreme Court held in *Ambrose* that failure to object or silence should not be construed as implied consent to a mistrial, particularly when the trial court acts abruptly and there is no opportunity to object. *Ambrose*, 598 P.2d at 360. "The double jeopardy protection is not so ephemeral that it vanishes if an accused does not anticipate and object to every unexpected action on the part of the court." *Id.* at 360–61. Furthermore, in *State v. Thompson,* when the trial court was adamant about its decision to order a new trial after jeopardy had attached and the statements of defendant's counsel did not unequivocally constitute consent to the termination, the supreme court found that double jeopardy barred a subsequent prosecution for the same offense, noting: "Upon the whole record, as made at the investigation, we cannot say as matter of law that defendant consented to the order declaring a mistrial and discharging the jury." 58 Utah 291, 199 P. 161, 165 (1921). Therefore, both the sequence of events leading to the trial termination, and the equivocation or ambiguity of a defendant's response are important factors to consider in determining whether reprosecution is permissible. Any doubts or close calls will be resolved in a defendant's favor.

The State argues that Nilson consented to the termination of his trial when his counsel stated, "I have no objection to the motion to dismiss." We, however, concur with the trial court that retrial of Nilson is impermissible.

The facts of this case do not allow us to construe Nilson's articulated lack of objection as constituting consent to the State's motion to dismiss. When the alleged victim's testimony unexpectedly changed late in the trial, everyone was caught off guard. It quickly became apparent, particularly after the trial court denied the State's motion to amend the information, that proceeding further would result in acquittal. The comments of the trial court that a directed verdict was imminent corroborates that likelihood. When the State moved for dismissal to expedite the inevitable, Nilson had no obligation to warn that double jeopardy might bar a subsequent reprosecution. Nor should he be required to actively oppose the dismissal of charges against him and insist that the inevitable scenario be played out, on pain of losing his protections under the double jeopardy clause. Given the dialogue about a probable directed verdict, the rapidity of the proceedings, and lack of argument by the State that the circumstances constituted "legal necessity" for declaration of a mistrial, we find Nilson's response was inadequate to constitute consent.

## CONCLUSION

Based on the foregoing analysis, we affirm the trial court's order quashing the information and terminating Nilson's prosecution on the basis that Nilson's constitutional double jeopardy protection precluded the State from refiling an information which charged him with the same offense as in his former prosecution. Nilson's lack of objection to the State's decision to move to dismiss his case was not the equivalent of giving consent to termination of his trial which would have allowed the State to retry him on the same charges.

GARFF and ORME, JJ., concur.