2002 UT App 348

STATE of Utah, Plaintiff and Appellee,

v.

Milton BRADLEY, Defendant and Appellant.

No. 990515–CA.

Court of Appeals of Utah.

Oct. 18, 2002.

John E. Hummel, St. George, and Blaine T. Hofeling, Hofeling & Wayment LLP, Cedar City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

1. The jury found Bradley guilty of two counts of aggravated sexual abuse of a child and four counts of sodomy on a child. However, the judgment entered and sentence imposed re-flected a conviction of one count of aggravated sexual abuse of a child and five counts of sodomy on a child.

## OPINION

DAVIS, Judge:

¶ 1 Appellant Milton Bradley (Bradley) appeals the convictions of one count of aggravated sexual abuse of a child, a first degree felony, in violation of Utah Code Ann. § 76-5-404.1 (1999), and five counts of sodomy on a child, a first degree felony, in violation of Utah Code Ann. § 76-5-403.1 (1999).[1] We affirm.

## BACKGROUND

¶ 2 The facts are viewed in a light most favorable to the jury verdict and are recited accordingly. *See State v. Loose,* 2000 UT 11, ¶ 2, 994 P.2d 1237.

¶ 3 Bradley divorced his wife, Deanna Bradley (Deanna), in March 1997 and moved to Richfield, Utah two months later with his eight-year-old biological son from a previous marriage, J.B. He made arrangements with Deanna to visit with her two children—A.S., his eight-year-old stepdaughter, and S.S., his ten-year-old stepson; to allow her to visit J.B.; and to visit with a daughter produced during their marriage. Deanna had another child from a prior marriage who did not visit with Bradley.

¶ 4 Between June 1997 and July 1998, Bradley performed various sexual acts upon both A.S. and S.S. The children testified to the allegations against Bradley as follows: In March 1998, Bradley used a vibrator on S.S.'s "private part," as well as his own; in April, Bradley "stuck his private part" in S.S.'s "backside"; Bradley placed his mouth on the private parts of both S.S. and A.S. in July; Bradley made S.S. watch a "bad movie" on three or four separate occasions; Bradley placed his penis on A.S.'s vagina and made her "suck his private" on two occasions; Bradley "sucked on [A.S.'s] private" and then performed oral sex on S.S.; Bradley made A.S. shower with him and perform oral sex on him afterwards; and A.S. remembered watching "bad movies" with Bradley about ten or eleven times and that Bradley

would make her "suck his private" after the movie. However, A.S. was only able to remember the incident where Bradley performed oral sex on both A.S. and S.S. on the day of trial.

¶ 5 Although the charges involving J.B. were not at issue at trial, J.B. was allowed to testify. J.B. stated that Bradley would place his penis in the "rear end" of J.B. "many times" and would make J.B. perform oral sex. Bradley would also make J.B. watch "nasty movies." When J.B. discovered that · A.S. and S.S. accused Bradley of the sexual crimes, J.B. told his mother that "[Bradley] did something bad to me, too."

¶ 6 Bradley denies that any of the incidents occurred. Two days prior to his arrest, he had an argument with Deanna. Bradley testified that Deanna was upset because she may have suspected that Bradley was getting back together with his other ex-wife.

¶ 7 During the preliminary hearing, an amended information was filed to bring additional charges against Bradley. After the information was amended, Bradley was charged with thirty-seven counts of aggravated sexual abuse of a child and thirty-one counts of sodomy on a child, with the vast majority of the various counts stemming from allegations made by A.S. and the rest from those made by S.S. The court asked if defense counsel was prepared to proceed and counsel specifically noted that Bradley was prepared to go forward on the amended information. Also during the preliminary hearing, the court clarified the counts and the period of months covered by each count.

¶ 8 Prior to trial, the State filed a motion for a joinder of trials in order to combine the charges involving allegations by S.S. and A.S. with those by J.B. The trial court ruled that even if there were two trials, the testimony of J.B. would be admissible for a proper, non-character purpose under rule 404(b) of the Utah Rules of Evidence in the first trial covering the allegations by A.S. and S.S. The court ruled that J.B.'s testimony was admissible under rule 404(b) "to establish the defendant's mens rea [or] knowledge, to some extent motive, opportunity, common scheme, but those I do not consider as important as— as the evidence of his knowledge or his mens

rea—his intent." The court then took a recess in order to allow Bradley to consider whether he preferred one trial combining J.B.'s allegations with those made by A.S. and S.S. or two separate trials. After the recess, Bradley's trial counsel addressed the court: "Your Honor, I'll inform the court that I spoke to Mr. Bradley considering the pros and cons of having two separate trials, but he would like to have a separate trial." The court then ordered two separate trials: one addressing the allegations made by A.S. and S.S.—with J.B.'s testimony admissible under rule 404(b)—and a second addressing J.B.'s allegations.

¶ 9 At trial, the State in opening argument made the following statement:

> You're going to hear from [J.B.]. You're going to hear what he has to say. Those aren't charges that you're dealing with here today, but ... that is testimony that you can and must consider in determining whether the abuse occurred to [A.S.] and [S.S.], what the abuse was and why.

No contemporaneous objection was made to the statement.

¶ 10 After the State rested its case, Bradley made a motion to dismiss and a motion for directed verdict. The trial court rejected the motions and ruled that there was sufficient evidence on which a jury could deliberate. At the conclusion of trial, Bradley made another motion to dismiss. In denying the motion, the trial court ruled that there was sufficient evidence to be weighed by the jury and that the jury had been instructed concerning the children's ages.

¶ 11 The jury found Bradley guilty of two counts of aggravated sexual abuse of a child and four counts of sodomy on a child. Notwithstanding the jury verdict, Bradley was sentenced to an indeterminate term of not less than five years to life for one count of aggravated sexual abuse of a child and a sentence of an indeterminate term of not less than six years to life for five counts of sodomy on a child. The counts of sodomy on a child would run concurrently but would run consecutively to the count of sexual abuse of a child.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 Bradley raises several issues on appeal.[2] First, Bradley argues that the trial court erred in allowing testimony from J.B. concerning prior bad acts under rule 404(b) of the Utah Rules of Evidence. We review a trial court's decision to admit evidence under rule 404(b) for abuse of discretion. *See State v. Widdison*, 2001 UT 60, ¶ 42, 28 P.3d 1278. Also, "[w]e review the record to determine whether the admission of [prior] bad acts evidence was 'scrupulously examined' by the trial judge 'in the proper exercise of that discretion.' " *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120 (citation omitted).

¶ 13 Second, Bradley contends that the State engaged in prosecutorial misconduct because the prosecutor's opening statement instructed the jury that it "must" consider J.B.'s testimony. "When objections are not made at trial and properly preserved, appellate review is under a 'plain error' standard." *State v. Ellifritz*, 835 P.2d 170, 174 (Utah Ct.App.1992).

¶ 14 Third, Bradley argues that the trial court erred in denying Bradley's motions for dismissal because (1) there was a significant variance in dates between the information and the trial testimony, and (2) the testimony of the children was inconsistent. The trial court's decision to deny a motion to dismiss is reviewed for correctness. *See State v. Horrocks*, 2001 UT App 4, ¶ 10, 17 P.3d 1145. The question of whether adequate notice is given to a defendant, which would defeat a variance challenge, is a question of law that is reviewed for correctness. *See State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991). Because Bradley argues post-verdict that the testimony of the children was inconsistent, Bradley is ultimately challenging the sufficiency of the evidence. When challenging the sufficiency of the evidence supporting a jury verdict, "we view the evidence and all inferences drawn therefrom in a light most favorable to the verdict." *State v. Heaps*, 2000 UT 5, ¶ 19, 999 P.2d 565.

¶ 15 Next, Bradley contends that trial counsel was ineffective based on the following: (1) failure to object to the prosecutor's opening statement, (2) failure to invoke the exclusionary rule at the preliminary hearing, (3) failure to seek a delay after the amended information was filed, and (4) failure to investigate or call witnesses in favor of Bradley.[3] Ineffective assistance of counsel claims are reviewed on appeal as a matter of law. *See State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376.

¶ 16 Finally, Bradley argues that the cumulative errors in the case undermine confidence in the verdict of the jury. Whether errors can be classified as cumulatively harmful turns on whether the errors undermine confidence in the jury verdict. *See State v. Palmer*, 860 P.2d 339, 350 (Utah Ct.App.1993).

---

**2.** Bradley argues that the trial court committed reversible error by denying his motions for mistrial based on (1) Deanna's presence in the courtroom during other witness testimony, and (2) the children being seen together talking during the trial. Other than reciting the standard of review, Bradley does not cite any legal authority in support of this contention, and he does not develop an argument as required by rule 24(a)(9) of the Utah Rules of Appellate Procedure. Thus, we decline to address this argument.

**3.** In his reply brief, Bradley argues that his trial counsel's failure to prepare a limiting instruction with respect to J.B.'s testimony constituted ineffective assistance of counsel. The State has filed a motion to strike this portion of Bradley's reply brief, claiming that he raised this issue for the first time in his reply brief. Bradley claims that the State raised this issue in its brief. We have closely examined the State's brief, and although the State does mention that Bradley did not prepare and submit a limiting instruction, this point was in response to Bradley's assertion that the trial court erred in admitting J.B.'s testimony under rule 404(b) of the Utah Rules of Evidence, "where there was no limiting instruction." The only argument made by the State based on this point is that Bradley waived any claim of error to the absence of a limiting instruction by failing to submit one. The State did not argue that this omission did or did not constitute ineffective assistance of counsel. Thus, we conclude, despite Bradley's assertion to the contrary, that the State did not raise the ineffectiveness of counsel issue in its brief. Pursuant to rule 24(c) of the Utah Rules of Appellate Procedure, we grant the State's motion to strike this portion of the reply brief, and we decline to consider this issue. *See State v. Kruger*, 2000 UT 60, ¶¶ 20–21, 6 P.3d 1116; *State v. Brown*, 853 P.2d 851, 854 n. 1 (Utah 1992).

## ANALYSIS

### I. Prior Bad Acts Testimony

¶ 17 Bradley argues that the trial court erred in admitting testimony concerning Bradley's sexual conduct towards J.B. Rule 404(b) of the Utah Rules of Evidence governs the admissibility of prior bad acts evidence and, at the time of the trial, provided:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In other words, evidence offered under this rule is admissible if it is relevant for a non-character purpose and meets the requirements of [r]ules 402 and 403.

Utah R. Evid. 404(b) (1999).[4]

¶ 18 Thus, prior bad acts testimony is admissible under rule 404(b) "if the evidence is relevant to a proper, non-character purpose, unless its danger for unfair prejudice and the like substantially outweighs its probative value."[5] *State v. Widdison,* 2001 UT 60, ¶ 41, 28 P.3d 1278. So long as the evidence is offered for a proper, non-character purpose, there is no presumption against admissibility. *See State v. Decorso,* 1999 UT 57, ¶¶ 23–24, 993 P.2d 837 (noting that any suggestion that prior crimes evidence is presumptively inadmissible is inaccurate).

¶ 19 The Utah Supreme Court has set forth a three-step process for determining whether prior bad acts evidence is admissible.[6] *See State v. Nelson–Waggoner,* 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120. First, a trial court must determine whether the bad acts evidence is being offered for a proper, non-character purpose, such as one of those specifically listed in rule 404(b). *See Nelson–Waggoner,* 2000 UT 59 at ¶ 18, 6 P.3d 1120. Second, the court must determine whether the prior bad acts evidence meets the requirements of rule 402. *See Nelson–Waggoner,* 2000 UT 59 at ¶ 19, 6 P.3d 1120. Third, the trial court must determine whether the prior bad acts evidence meets the requirements of rule 403. *See Nelson–Waggoner,* 2000 UT 59 at ¶ 20, 6 P.3d 1120.

¶ 20 Here, the State contends that J.B.'s testimony is admissible for the following proper, non-character purposes: (1) to corroborate the testimony given by A.S. and S.S.,[7] and (2) to show the specific intent required by the aggravated sexual abuse of a child statute, which is the "intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant." Utah Code Ann. § 76–5–404.1 (1999). In a pretrial hearing, the trial court determined that J.B.'s testimony was admissible primarily for the purpose of proving Bradley's intent. At trial, J.B. then testified to the instances of sexual abuse committed by Bradley outlined above.

---

4. Rule 404(b) has since been amended to follow the Federal Rule of Evidence verbatim. *See* Utah R. Evid. 404(b) advisory committee's note. The amended version includes a notice provision and has deleted the last sentence that addresses meeting the requirements of rules 402 and 403. However, under the amended version, evidence must still conform with rules 402 and 403 to be admissible. *See* Utah R. Evid. 404(b) advisory committee's note.

5. *See* note 4.

6. The Utah Supreme Court has recently applied the analysis to determine if prior bad acts evidence is admissible for the proper non-character purposes of identity and knowledge under rule 404(b). *See State v. Fedorowicz,* 2002 UT 67, 52 P.3d 1194.

7. Because J.B.'s testimony is admissible to show intent, I find it unnecessary to address the State's

argument concerning the admissibility of prior bad acts evidence to corroborate the victim's testimony. *See State v. Marks,* 120 Idaho 727, 819 P.2d 581, 585 (App.1991) (holding, where the prosecution had to prove the defendant "had the intent to gratify his sexual desires," that "the 'intent' exception to [r]ule 404(b) is dispositive").

However, in his concurring opinion, Judge Thorne concludes that the evidence is admissible to rebut Bradley's defense that "the victim's mother had either fabricated the charges ... or had encouraged the victims to lie." I am concerned that allowing prior bad acts testimony to rebut a fabrication defense by, in effect, bolstering a victim's credibility would "eviscerate[ ] the language and spirit of rule 404(b)" in that the "doctrine could be invoked in nearly every criminal case." *State v. Mitchell,* 633 N.W.2d 295, 300 (Iowa 2001).

¶ 21 Intent is one of the legitimate, non-character purposes explicitly enumerated in rule 404(b). *See* Utah R. Evid. 404(b). In *Widdison,* our supreme court noted that evidence of prior acts of child abuse committed by the defendant against children other than the victim could be admissible to show intent. 2001 UT 60 at ¶ 43, 28 P.3d 1278. Furthermore, if specific intent is an element of the offense, prior bad acts may be admissible to establish the element of intent. *See State v. Teuscher,* 883 P.2d 922, 926 (Utah Ct.App. 1994).

¶ 22 In *Teuscher,* the trial court admitted evidence of the defendant's prior acts of child abuse under rule 404(b). *See id.* The defendant argued that intent was not at issue in the case. *See id.* However, the defendant was charged with second degree murder, a specific intent crime. *See id.* The court noted that since the defendant pleaded not guilty, every element of the charge was at issue. *See id.* at 927. Thus, prior acts of child abuse committed by the defendant against children other than the victim were deemed properly admissible to prove the intent at issue. *See id.* at 928.

¶ 23 In the present case, Bradley was charged with several counts of aggravated sexual abuse of a child.[8] Under the statute governing the offense of sexual abuse of a child, the State must prove beyond a reasonable doubt that the offender had the "intent to cause substantial emotional or bodily pain to any person" or the "intent to arouse or gratify the sexual desire of any person regardless of the sex of the participant." Utah Code Ann. § 76-5-404.1. Bradley entered a plea of not guilty, putting every element of the offense at issue. *See Widdison,* 2001 UT 60 at ¶ 45, 28 P.3d 1278; *People v. Brown,* 199 Ill.App.3d 860, 145 Ill.Dec. 841, 557 N.E.2d 611, 621 (1990) ("Where specific intent is an element of the crime, the prosecution may introduce evidence of other offenses to establish the element of intent even if the defendant has not placed intent into question."). Thus, because specific intent is an

element of the offense, Bradley's intent was at issue during trial.

¶ 24 Other jurisdictions have allowed bad acts evidence to show that a defendant held the intent he was charged with under circumstances like those present here. *See, e.g., People v. Duncan,* 33 P.3d 1180, 1183–84 (Colo.Ct.App.2001) (stating evidence of prior similar acts involving sexual assault on a child is admissible to show intent, relying in part on rule 404(b)); *State v. Marks,* 120 Idaho 727, 819 P.2d 581, 585 (App.1991) (noting that evidence of contemporaneous sexual abuse of another minor in defendant's home is admissible to show requisite intent at time of charged incident); *State v. Cichon,* 458 N.W.2d 730, 734–35 (Minn.Ct.App.1990) (admitting evidence of prior sexual act to show intent although incident occurred fourteen years earlier than offense charged at trial).

¶ 25 Therefore, we conclude that the trial court did not abuse its discretion when it determined that the testimony of J.B. was admissible for the proper, non-character purpose of showing intent under rule 404(b).[9] Thus, the first step in the three-step process is satisfied.

¶ 26 The second step in determining the admissibility of prior bad acts evidence is that the trial court must determine whether the prior bad acts evidence is relevant under rule 402. According to rule 402, all relevant evidence is admissible unless otherwise provided. *See* Utah R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. Evidence is admissible if it tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime. *See Decorso,* 1999 UT 57 at ¶ 22, 993 P.2d 837.

¶ 27 In this case, the trial court ruled that the acts committed against J.B. were "easily relevant" under rule 402. Because the prior

---

8. However, only two counts were actually submitted to the jury for a verdict.

9. However, we follow the Utah Supreme Court in cautioning trial courts that the circumstances

that would allow evidence of prior sexual acts to be admitted are "rare and require the highest scrutiny of the trial judge." *State v. Reed,* 2000 UT 68, ¶ 28 n. 3, 8 P.3d 1025.

sexual acts against J.B. would assist the trier of fact in determining whether Bradley held the requisite intent to "arouse or gratify the sexual desire of any person," the evidence is relevant. *See State v. Wilhelm,* 168 Or.App. 489, 3 P.3d 715, 717 (2000) (holding evidence of intent to arouse or gratify sexual desire is relevant where it is an element of the crime charged). Because J.B.'s testimony that Bradley committed sexual acts against him is material to demonstrate an intent similar to that of the charged offenses against A.S. and S.S., the evidence is admissible.

¶ 28 In addition, the testimony of J.B. is relevant because it tends to rebut the defense of fabrication raised here by Bradley. Bradley argued that A.S. and S.S. were influenced by Deanna to fabricate the charges. Because J.B. has a different mother than A.S. and S.S., Bradley's theory is diminished by J.B.'s testimony because it is more difficult to believe that both mothers were motivated to, and were successful in, convincing their children to fabricate the allegations of sexual abuse. Thus, the trial court did not abuse its discretion in finding the evidence relevant.

¶ 29 Finally, step three requires the trial court to examine whether the evidence is admissible under rule 403. Rule 403 requires evidence be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. When conducting a rule 403 review of prior bad acts evidence, trial courts should consider several factors, including: (1) " 'the strength of the evidence as to the commission of the other [bad acts],' " (2) " 'the similarities between the [charged offense and the prior bad acts],' " (3) " 'the interval of time that has elapsed between the [charged offense and the prior bad acts],' " (4) " 'the need for the evidence,' " (5) " 'the efficacy of alternative proof,' " and (6) " 'the degree to which the evidence will rouse the jury to overmastering hostility.' " *Widdison,* 2001 UT 60 at ¶ 50, 28 P.3d 1278 (quoting *State v. Shickles,* 760 P.2d 291, 295–96 (Utah 1988)).

¶ 30 Under the first *Shickles* factor, the evidence of sexual acts perpetrated against

J.B. is strong. J.B. testified that Bradley engaged in sexual conduct with J.B. just as he did with A.S. and S.S. In addition, J.B. immediately informed his mother that Bradley had sexually abused him when he discovered that A.S. and S.S. had come forward with their allegations. J.B.'s testimony provides strong evidence that the acts occurred and helps show that Bradley had the requisite intent to commit the offenses against both A.S. and S.S.

¶ 31 Second, there was a significant similarity between the crimes committed against J.B. and those perpetrated against A.S. and S.S. Bradley used a similar methodology and plan in abusing J.B. and the other children. For example, he made all the children watch pornographic movies and perform oral sex on him. In addition, all of the acts took place at his residence in Richfield. Furthermore, Bradley committed offenses against the children regardless of their gender.

¶ 32 Third, there was an overlap in the time of the abuse. The abuse of A.S. and S.S. occurred at times between May 1997 and July 1998. Similarly, the abuse of J.B. occurred in May 1997. Thus, there was no distinguishable interval of time that had elapsed between the offenses committed against A.S. and S.S. and the misconduct committed against J.B.; indeed, the acts occurred contemporaneously.

¶ 33 In *Nelson–Waggoner,* the court specifically recognized that " 'proximity in time combined with similarity in type of crime virtually guarantees admittance of prior bad acts evidence.' " 2000 UT 59 at ¶ 29, 6 P.3d 1120 (citation omitted). Therefore, because of the proximity in time and similarity of the acts, the evidence offered by J.B.'s testimony is "highly probative." *Id.*

¶ 34 Fourth, the evidence was necessary to show that Bradley had the specific intent to abuse both A.S. and S.S. Without the evidence, the State's case suffers. For example, without the testimony of J.B., the jury would have only the testimony of the two children to weigh against Bradley's theory that the children fabricated the allegations of the abuse at Deanna's urging. Evidence provided through J.B.'s testimony would assist the jury in measuring the credibility of

all the witnesses. J.B.'s testimony helps rebut any suggestion of fabrication on the part of the two stepchildren because J.B. was Bradley's biological son and permanently lived with Bradley, while the other children lived with Deanna. In addition, J.B. had a different mother than A.S. and S.S. Because the children have two different mothers—one living out-of-state in Oklahoma at the time of the final incident involving J.B.—it is highly unlikely that the mothers orchestrated the testimony of the three children.

¶ 35 Fifth, there was no evidence in the record of any alternative proof showing that Bradley committed offenses against A.S. and S.S. and had the intent to do so. There was no physical evidence of the offenses and there were no eyewitnesses to the offenses besides the child victims themselves. Thus, there was no alternative proof to J.B.'s testimony. In addition, it is appropriate to give considerable deference to a party's assessment of its need for specific evidence. *See Wilhelm*, 3 P.3d at 718.

¶ 36 Finally, the testimony of J.B. would not tend to rouse the jury to overmastering hostility. Both A.S. and S.S. testified to the abuse committed by Bradley. There was nothing in J.B.'s testimony that was substantially dissimilar to that of A.S. and S.S. that would have caused the jury to hold an increased hostility toward Bradley.

¶ 37 In light of the application of the *Shickles* factors, we hold that the trial court did not abuse its discretion in ruling that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice.

■ ¶ 38 The crux of Bradley's argument is that the trial court did not engage in a scrupulous examination in determining whether the prior acts committed against J.B. were admissible under rule 404(b).[10] In exercising discretion concerning the admissibility of prior bad acts evidence, a trial court

must "'scrupulously' examine the evidence before it is admitted." *Widdison*, 2001 UT 60 at ¶ 42, 28 P.3d 1278 (citation omitted). In *Widdison*, the Utah Supreme Court concluded that a scrupulous examination had occurred because the parties extensively briefed and argued the issue. *See id.* at ¶ 44. In *Nelson–Waggoner*, our supreme court acknowledged that the trial court had not made specific findings under rule 403 but decided that an inference that the requirements of rule 403 were met could be made from the fact that the trial court ruled prior bad acts evidence admissible. 2000 UT 59 at ¶ 28 n. 8, 6 P.3d 1120. Here, the trial court conducted a pre-trial hearing that addressed the rule 404(b) evidence in the context of a motion to consolidate cases for trial. Both sides submitted briefs addressing the issue of prior bad acts evidence and there was a great deal of discussion concerning the admission of J.B.'s testimony. After addressing some of the *Shickles* factors specifically, the trial court ruled the evidence admissible. We do not think the trial court erred here in not making specific, detailed findings on each of the *Shickles* factors because during the pre-trial hearing, Bradley did not challenge the State's representations concerning the *Shickles* factors, including the strength of the evidence, the overlap in time, and the similarity of the offenses, but focused instead on the relevancy and materiality of J.B.'s testimony. Thus, the type of analysis engaged in by the trial court in *Nelson–Waggoner*[11] was unnecessary here. Therefore, under the circumstances of this case, we conclude that the trial court engaged in a sufficiently scrupulous examination of the evidence to make its ruling.

■ ¶ 39 Finally, Bradley contends that he was prejudiced because the court did not provide a limiting instruction on how to view and analyze the testimony of J.B. Actually, the trial court did request defense counsel to

---

10. Bradley argues that the trial court erred by focusing excessively on a telephone call Bradley made to J.B. shortly after the allegations were made by A.S. and S.S. Bradley argues that the court drew a negative inference from the telephone call and focused on the call instead of performing a proper analysis under rule 404(b). Because we conclude J.B.'s testimony was admissible to show Bradley acted with the intent required by statute, any reliance on an inference from the telephone call was harmless error. *See* Utah R.Crim. P. 30(a).

11. The trial court determined that evidence of prior bad acts was admissible under rule 404(b) if proffered testimony met six of ten factual similarities to prior offenses. *See State v. Nelson–Waggoner*, 2000 UT 59, ¶ 23, 6 P.3d 1120.

submit a jury instruction pertaining to the rule 404(b) evidence in order to reiterate that the jury would not be permitted to consider J.B.'s testimony to establish a propensity to commit the offense. There is no evidence that the trial court would have refused to include such an instruction if it had been drafted by counsel. Thus, "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993). Bradley invited any error by failing to draft the limiting instruction.

¶ 40 Therefore, the trial court did not abuse its discretion by ruling the evidence of sexual abuse against J.B. was admissible under rule 404(b) because the evidence was offered for a proper, non-character purpose and it met the requirements of rules 402 and 403.

## II. Prosecutorial Misconduct

¶ 41 Bradley argues that the State engaged in improper conduct by making the following statement during opening argument:

> You're going to hear what [J.B.] has to say. Those aren't charges that you're dealing with here today, but ... that is testimony that you can and must consider in determining whether the abuse occurred to [A.S.] and [S.S.], what the abuse was and why.

Bradley never objected to this statement at trial. Because the issue is being raised for the first time on appeal, we review the issue under a plain error standard. *See State v. Ellifritz,* 835 P.2d 170, 174 (Utah Ct.App. 1992). To establish plain error, a defendant must show: (1) an error did in fact occur, (2) the error should have been obvious to the trial court, and (3) the error is harmful. *See State v. Olsen,* 860 P.2d 332, 334 (Utah 1993).

¶ 42 In order to demonstrate prosecutorial misconduct, a defendant must show that " 'the actions or remarks of ... counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict.' " *State v. Kohl,* 2000 UT 35, ¶ 22, 999 P.2d 7 (quoting *State v. Longshaw,* 961 P.2d 925, 928 (Utah Ct.App.1998) (citations omitted)).

¶ 43 Bradley contends the statement indicated to the jury that they were required to use J.B.'s testimony to decide if Bradley had the criminal propensity to abuse A.S. and S.S. and that he acted in accordance with such a propensity. Bradley relies on the unpublished decision of *State v. Martinez,* which noted that the prosecutor's comment about the defendant being "predisposed to commit these crimes" was "clearly improper." 2001 UT App 90, ¶ 11 n. 2.

¶ 44 Bradley contends that his case is "strikingly similar" to *Martinez.* We disagree. In Bradley's case, the State did not explicitly express that the defendant was predisposed to commit sexual abuse. The State only noted that the testimony of J.B. "must" be considered. J.B.'s testimony was properly admitted evidence and the jury was actually instructed by the trial court to "weigh[ ] all the available evidence" to determine Bradley's guilt on the charges. The State merely urged the jury to consider evidence already determined admissible in a pretrial hearing. *Cf. State v. Saunders,* 1999 UT 59, ¶ 25, 992 P.2d 951 (holding that intentionally calling to jurors' attention matters that they should not consider in reaching a verdict is clear misconduct). Thus, the State acted properly and in accordance with the trial court's instructions that the jury consider all evidence.

¶ 45 In sum, the State did not make an improper comment regarding Bradley's propensity to commit sexual abuse. Therefore, the State did not call attention to a matter that should not have been considered by the jury. Thus, the State's opening statement that the jury "must" consider J.B.'s testimony does not amount to error.

## III. Motions to Dismiss

¶ 46 Next, Bradley argues the trial court erred in denying his motions to dismiss for two reasons: (1) there was a variance in the dates between the information and testimony at trial, such that Bradley did not receive adequate notice of the crime charged, and (2) there were numerous discrepancies in the testimony of the children between the investigation, the preliminary hearing, and the trial, such that the testimo-

ny was inherently unreliable and no reasonable jury could reach a guilty verdict on this evidence.

¶ 47 First, Bradley argues that the testimony at trial and the dates contained in the information are inconsistent. The Utah Supreme Court has recognized that notice problems can exist, especially concerning date, place, and time, in prosecutions based on the testimony of young victims. *See State v. Wilcox*, 808 P.2d 1028, 1032 (Utah 1991). In *Wilcox*, the child lived with the defendant half of the time between January 1985 and September 1987. *See id.* at 1030. The child was unable to affix a certain or approximate date or time to the abusive activities. *See id.* The defendant claimed that because of the lack of specificity in dates and times, he was unable to prepare an alibi defense. *See id.* at 1033. The court in *Wilcox* concluded that an alibi defense was doubtful because the defendant had continual contact with the child over a thirty-two month period. *See id.* at 1033–34.

¶ 48 Also, in *Wilcox*, the court specifically noted that "the problem of young children who are unable to specify a date on which abuse occurred or a location where it occurred is exacerbated by situations in which the abuse occurred on many occasions over a long period of time." *Id.* at 1033. The court noted that evidence of time and place for offenses involving young children does not require the degree of specificity as to time and place as would be the case if an adult were involved. *See id.* Furthermore, a lack of specificity may not pose any substantial harm to the defendant so long as the defendant is not misled into preparing a defense oriented toward a crime different from that at trial. *See id.* at 1034.

¶ 49 The information charging Bradley specified that the alleged offenses occurred between May 1997 and July 1998. During trial, the children were not able to specify exact times and dates of the alleged abuse. However, S.S. was able to confirm the months in which three of the incidents occurred. In addition, Bradley cared for the children at least every other weekend during the fifteen-month period. Therefore, Bradley had significant, if not continual, contact with the children. Given the ages of the children—eight and ten—the lack of specific-

ity is not impermissible. Thus, Bradley was adequately notified of the time frame in which the alleged abuse occurred.

¶ 50 Furthermore, Bradley has not shown how he has been prejudiced by the lack of specificity. He unsuccessfully relies on *State v. Nilson*, 854 P.2d 1029 (Utah Ct.App.1993), to contend that the inability of the children to pinpoint the dates of the alleged abuse results in substantial prejudice. In *Nilson*, the information alleged that sexual abuse had taken place between February and April 1989. *See id.* at 1029. During redirect examination, the victim testified that the abuse had occurred in 1990. *See id.* Thereafter, the prosecutor attempted to amend the information to charge that abuse had occurred between February and April 1990. *See id.* at 1029–30. The court determined that this was a violation of the defendant's protection against double jeopardy. *See id.* at 1032.

¶ 51 Unlike *Nilson*, there was no testimony here that abuse occurred during a time period that was not alleged in the information. Because neither A.S. nor S.S. testified to abuse outside the time frame of the charging document, this case is distinguishable. Moreover, where, as here, there is evidence of recurring abuse and the defendant does not assert an alibi defense, concerns about specificity diminish. Therefore, Bradley has not demonstrated substantial prejudice caused by any alleged discrepancy between the information and the children's testimony.

¶ 52 Bradley's second challenge is to the sufficiency of the evidence supporting the jury verdict. We review a challenge that there was insufficient evidence to warrant sending the case to the jury under "the same standard applied to a claim that insufficient evidence exists to support a jury verdict." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). Thus, to reverse a jury verdict, we must find that "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *State v. Heaps*, 2000 UT 5, ¶ 19, 999 P.2d 565 (citation and internal quotations omitted). Therefore, as long as there is some evidence and reasonable inferences to support the jury's verdict, we will not disturb a jury's findings. *See id.*

¶ 53 In the case at issue, Bradley filed a motion to dismiss after presentation of the State's evidence and again after presentation of his evidence. The trial court rejected both motions and concluded that there was sufficient evidence for the jury to deliberate.

 ¶ 54 It is the province of the jury to weigh the testimony and credibility of the witnesses. *See State v. Boyd,* 2001 UT 30, ¶ 16, 25 P.3d 985. Thus, this court will not sit as a second trier of fact. *See id.*

¶ 55 In Bradley's case, the jury had the sole responsibility for evaluating any discrepancies in the children's testimony. In fact, the trial court specifically instructed the jury that the age and circumstances of the children could be considered in determining the weight to be given to their testimony. Therefore, any consideration of discrepancies in testimony was in the sole province of the jury and will not be disturbed by this court.

¶ 56 The trial court was correct in denying Bradley's motions to dismiss. *See State v. Horrocks,* 2001 UT App 4, ¶ 10, 17 P.3d 1145.

### IV. Ineffective Assistance of Counsel

 ¶ 57 Bradley argues that the representation by trial counsel was ineffective and prejudicial because his trial counsel (1) failed to object to the prosecutor's opening statement, (2) failed to invoke the exclusionary rule at the preliminary hearing, (3) failed to seek a delay after the amended information was filed, and (4) failed to investigate or call witnesses in favor of Bradley.

¶ 58 To demonstrate ineffective assistance of counsel, Bradley must show that the trial counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 104 S.Ct. 2052 (1984). First, a defendant must point to specific instances in the record where counsel's assistance was inadequate. *See State v. Strain,* 885 P.2d 810, 814 (Utah Ct.App.1994). "In so doing, the defendant must overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strick-*

*land,* 466 U.S. at 689, 104 S.Ct. at 2065). Furthermore, we will not "second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *Id.* (citation and internal quotations omitted).

¶ 59 In order to show that the defendant was prejudiced by ineffective assistance of counsel, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. However, "in cases in which it is 'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' we will do so without addressing whether counsel's performance was professionally unreasonable." *Strain,* 885 P.2d at 814 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069).

¶ 60 First, Bradley argues that trial counsel's failure to object to the State's opening statement constituted ineffective assistance of counsel. As previously demonstrated, the State's comment was not improper, and an objection by Bradley's trial counsel would have been futile. *See State v. Kelley,* 2000 UT 41, ¶ 26, 1 P.3d 546. Therefore, failure to object to the statement cannot constitute ineffective assistance of counsel.

¶ 61 Second, Bradley contends that trial counsel's failure to invoke the exclusionary rule during the preliminary hearing was ineffective assistance of counsel. Specifically, Bradley points out that trial counsel failed to object to witnesses being in the courtroom and listening to each other's testimony. Bradley did not present any evidence that witness testimony was possibly influenced by the presence of others in the courtroom. Also, the child victims were related and resided together, so there was ample opportunity for the children to speak prior to the preliminary hearing, which occurred about a month after the final alleged incident of abuse.

¶ 62 Bradley has not demonstrated that he suffered any prejudice as a result of the witnesses being present in the courtroom.[12]

---

12. Bradley mentions that trial counsel did not object to the State's references to testimony of other witnesses to "lead the current witness."

However, this argument has not been adequately briefed; thus we do not address it. *See* Utah R.App. P. 24(a)(9).

Bradley argues that the trial court may not have found probable cause if it were able to hear the confusing and contradictory testimony that would have resulted had the witnesses not been able to collaborate. However, Bradley cannot challenge the trial court's finding of probable cause because he has already been convicted by a jury. Specifically, the jury found Bradley guilty of the charged offenses beyond a reasonable doubt, a much higher standard of proof than probable cause. Thus, the argument that Bradley was prejudiced fails. *See State v. Quas*, 837 P.2d 565, 566–67 (Utah Ct.App.1992).

¶ 63 Third, Bradley argues that trial counsel's failure to seek a delay at the preliminary hearing following receipt of an amended information was ineffective assistance of counsel. During the preliminary hearing, Bradley received an amended information that contained thirty-eight new counts. The trial court specifically asked defense counsel whether he was prepared to go forward based on the amended information.

¶ 64 Bradley is unable to demonstrate any prejudice suffered by counsel's failure to seek delay. He merely contends that he "was simply unprepared to meet the 38 new counts against him." However, Bradley has not offered any evidence as to what preparation beyond what had been done was required. The amended information did not add any new, distinct charges or specify any different time period than was alleged in the original information. Therefore, Bradley has not demonstrated that he was significantly prejudiced by counsel's failure to seek delay upon receipt of the amended information.

¶ 65 Finally, Bradley argues that trial counsel's failure to investigate or call witnesses constitutes ineffective assistance of counsel.[13] Bradley offers no evidence that he was prejudiced by counsel's failure to investigate or call identified witnesses. In fact, Bradley does not offer any evidence about who these potential witnesses are or what their testimony would entail. Therefore, the record is inadequate to enable us to consider this claim. *See State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92 (holding that when a defendant raises a claim on direct appeal that trial counsel was ineffective, defendant bears the burden of assuring record is adequate).

### V. Cumulative Error

¶ 66 Finally, Bradley contends that the cumulative errors and inconsistent testimony in this case undermine the confidence of the jury verdict. Bradley claims that the trial court committed numerous errors, as set forth above, and he argues that the testimony of the children was inconsistent and there were previous false reports made against Bradley by a sibling of A.S. and S.S.

¶ 67 No single error occurred during the proceedings against Bradley. As previously determined, the trial court did not err in admitting J.B.'s testimony under rule 404(b). There was no prosecutorial misconduct that resulted in error and there was no ineffective assistance of counsel. Also, the trial court did not err in rejecting Bradley's motions for dismissal. Because there was no discernible error committed by the trial court, "our confidence in the essential fairness of the trial" is not undermined, *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993), and this argument also fails.

### CONCLUSION

¶ 68 We hold that the trial court did not abuse its discretion in admitting the testimony of J.B. under rule 404(b); the State did not engage in prosecutorial misconduct when it urged the jury to consider admissible evidence; the trial court correctly denied Bradley's motions to dismiss since there was adequate notice of the charges and dates involved given to Bradley and there was sufficient evidence to support the jury verdict; Bradley's ineffective assistance of counsel claim fails; and there were no errors that could combine to constitute cumulative error.

---

13. This court previously denied two separate rule 23(b) of the Utah Rules of Appellate Procedure motions for remand filed by Bradley. On May 8, 2000, we denied a rule 23(b) remand based on Bradley's contention that the attorney failed to investigate and interview witnesses because the motion was unsupported by specific factual allegations. On November 24, 2000, we concluded that Bradley had not demonstrated prejudice in order to support a remand because the introduction of additional witness testimony would be merely cumulative.

¶ 69 However, in accordance with rule 22 of the Utah Rules of Criminal Procedure, the case is remanded to the trial court for the limited purpose of addressing the conflict between the sentence imposed and the jury verdict.

THORNE, Judge (concurring):

¶ 70 While I concur with the analysis of the lead opinion concerning most of the issues Bradley has presented on appeal, and with the results reached in that opinion on every issue, I disagree with Judge Davis's reliance upon intent in determining the outcome of the 404(b) issue. My review of the record suggests that intent was never really in issue. Rather, Bradley steadfastly denied that the abuse had ever occurred and claimed that the accusations were most likely fabricated by his ex-wife. Thus, the State sought to admit J.B.'s testimony primarily to refute this defense, rather than to prove that Bradley possessed the requisite intent to sexually abuse S.S. and A.S. I, therefore, would follow a different analytical path to determine that the trial court did not err in admitting J.B.'s testimony.

¶ 71 Bradley argues that the trial court committed reversible error in admitting into evidence other acts of sexual abuse allegedly committed by Bradley against his son, J.B. The admissibility of evidence of other bad acts committed by a defendant is governed by rule 404(b) of the Utah Rules of Evidence and the standard articulated by the Supreme Court in *State v. Decorso.* *See* 1999 UT 57, ¶ 20, 993 P.2d 837; *see also State v. Fedorowicz,* 2002 UT 67, ¶ 26, 52 P.3d 1194; *State v. Nelson–Waggoner,* 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120. Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident....

Utah R. Evid. 404(b). However, "[t]he list provided by the rule is not exhaustive," *United States v. Cohen,* 888 F.2d 770, 776 (11th Cir.1989), rather, it is merely illustrative and "*any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered ... to prove character." *United States v. Miller,* 895 F.2d 1431, 1436 (D.C.Cir.1990).[1] Included among these purposes is the preemption of a defendant's claim that the charges were fabricated. *See id.*

¶ 72 "In determining whether evidence of [other] bad acts is admissible, the trial court must initially decide whether the evidence is offered for a proper, noncharacter purpose rather than only to show the defendant's propensity to commit the crime charged." *Fedorowicz,* 2002 UT 67 at ¶ 26, 52 P.3d 1194 (citation omitted). If the court determines that the evidence is being offered for a proper, non-character purpose, the court must then determine whether the bad-act evidence is relevant to the case at hand, under rule 402 of the Utah Rules of Evidence, and whether the evidence violates the principles of rule 403 of the Utah Rules of Evidence. *See id.* (citation omitted). The trial court will exceed its permitted range of discretion if it does not scrupulously examine the evidence to (1) determine that it is offered for a proper, non-character purpose, (2) that it is relevant to the case at hand, and (3) that it satisfies rule 403, before admitting the evidence. *See id.* at ¶ 24 (citations omitted).

A. Purpose of the Evidence

¶ 73 As a threshold matter, we must review the record to determine whether the State offered J.B.'s testimony for a proper, non-character purpose. To meet this threshold, the " 'evidence must have probative value other than to show an evil propensity or [a] criminal temperament.' " *Id.* at ¶ 27 (quoting *State v. Reed,* 2000 UT 68, ¶ 24,

---

1. Although the Federal rules of Evidence are a separate body of law from the Utah Rules of Evidence, if the reasoning of a federal case interpreting or applying a federal evidentiary rule is cogent and logical, we may freely look to that case, absent a Utah case directly on point, when we interpret or apply an analogous Utah evidentiary rule. *State v. Fedorowicz,* 2002 UT 67 n. 1, 52 P.3d 1194; *see also* Utah R. Evid. 404 advisory committee's notes (stating "Rule 404 is now Federal Rule of Evidence 404 verbatim.").

8 P.3d 1025). In the instant case, the State offered the evidence for a proper, non-character purpose: to refute Bradley's claim that the victim's mother had either fabricated the charges herself or had encouraged the victims to lie. *See Miller,* 895 F.2d at 1435 n. 9 ("Because the Government could 'fairly anticipate [the defendant's] defense' that [a witness] had falsely implicated [the defendant] in the check-forging scheme, it was entitled to preempt this line of argument through relevant bad-acts 'evidence ... as part of its case in chief.' " (final alteration in original)); *see also Fedorowicz,* 2002 UT 67 at ¶ 30, 52 P.3d 1194 (citing cases permitting the use of prior bad-act evidence to rebut a defense raised exclusively on cross examination of the State's witnesses). To refute Bradley's defense, the State offered J.B.'s testimony that highlighted "a pattern of behavior in which defendant engaged that was consistent with" the claims of the victims in the instant case. *Nelson–Waggoner,* 2000 UT 59 at ¶ 25, 6 P.3d 1120.

¶ 74 J.B. testified on direct examination that Bradley would instruct him to go into the bedroom, remove his clothing, and lie face down on the bed. He further testified that Bradley would then place his penis in J.B.'s "rear end," and that Bradley also forced J.B. to perform oral sex on Bradley. During cross-examination, J.B. testified that Bradley made him watch "nasty movies" and that he had seen a vibrator in Bradley's dresser drawer. J.B. also testified that Bradley never performed any of these acts in the presence of the other children and that he had never witnessed Bradley abuse either S.S. or A.S. Because J.B.'s testimony focused on the similarities between his alleged abuse and the abuse inflicted upon both S.S. and A.S., and not Bradley's character, the trial court did not abuse its discretion. *See Nelson–Waggoner,* 2000 UT 59 at ¶ 25, 6 P.3d 1120; *Decorso,* 1999 UT 57 at ¶ 27, 993 P.2d 837.

¶ 75 Next, we must ensure that J.B.'s testimony was relevant to the instant case. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *Fedorowicz,* 2002 UT 67 at ¶ 32, 52 P.3d 1194 (citation omitted). "[U]nless the other crimes evi-

dence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded by the court pursuant to rule 402." *Decorso,* 1999 UT 57 at ¶ 22, 993 P.2d 837. However, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue...." *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

¶ 76 Here, as we have previously discussed, J.B.'s testimony was relevant to Bradley's anticipated defense that the victims in this case were fabricating the charges of sexual abuse. In fact, Bradley's sole defense was that the allegations made by the two child victims had never occurred and were, most likely, an attempt by his ex-wife to gain leverage in seeking custody of their young daughter. J.B., however, did not share the same relationship with Bradley's ex-wife, thus, he had little or no reason to fabricate either his alleged abuse or the circumstances surrounding the abuse. Therefore, J.B.'s testimony was probative of the circumstances surrounding the abuse of S.S. and A.S. and to refute Bradley's expected defense of fabrication. Accordingly, the trial court did not err in determining that J.B.'s testimony was relevant to the instant case.

¶ 77 The proper analytical framework would normally, at this point, focus on determining whether the prior bad-act evidence comports with the expectations of rule 403 of the Utah Rules of Evidence. However, because I believe that the lead opinion has fully and properly addressed this element, I do not address this element.

¶ 78 While I disagree with the method, I concur with the lead opinion concerning the admissibility of J.B.'s testimony regarding Bradley's other bad-acts. Absent this disagreement, I concur in the lead opinion. I also concur in Judge Orme's opinion.

ORME, Judge (concurring specially):

¶ 79 I agree with the views expressed by Judge Thorne on the "prior bad acts" issue dealt with in Section I of the lead opinion, and so Judge Thorne's opinion controls that issue and sets forth the basis on which we affirm the trial court's decision to permit

J.B.'s testimony. Like Judge Thorne, I join the lead opinion with respect to the remaining issues.

¶ 80 I write separately to add two points to the discussion. First, I simply do not see how prior bad acts can come in to prove intent in any case involving a specific-intent sex crime—even if the defendant has not meaningfully challenged the intent element—if it is true, as our Supreme Court recently said, that circumstances when such evidence of prior sexual acts could be admitted are "rare." *State v. Reed,* 2000 UT 68, ¶ 28 n. 3, 8 P.3d 1025. Such circumstances will most certainly not be "rare" if nothing more is required by way of an intent "hook" than that the crime charged has a specific-intent element. Because of how damning other sexual misdeeds will be in the eyes of a jury, more should be required in order to view prior bad acts as bearing on intent. As examples, prior instances of similar sexual misconduct could properly be admitted in most cases where the defendant admitted to touching the victim, but claimed it was inadvertent, for the purpose of administering a medicine or ointment, or for some other proper purpose.

¶ 81 Second, this area appears to be something of a minefield. Despite the Supreme Court's admonition in *Reed,* there are decisions cited in the lead opinion that seem to open the door to evidence of prior bad acts coming in to prove intent even if intent is not really in issue. Thus, defendants would be well advised, in those cases where the defense is "it never happened" or "I wasn't the one," to make clear at the outset of trial that there is no challenge to the specific-intent element, i.e., that it is conceded that if the claimed touching happened, it was for no purpose other than sexual gratification. With such a concession made, there surely would be no occasion for the prosecution to belabor the intent element, whether by seizing upon evidence of prior bad acts or otherwise.